Edward Chandler HUGHES, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 46652.

Court of Criminal Appeals of Texas.

March 6, 1974.

Dan J. Anderson, Richardson, for appellant.

Henry Wade, Dist. Atty. and W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty. and Bud-

dy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for murder with malice wherein the punishment was assessed at death.

The State's evidence reflects that on the night of August 24, 1971, the appellant took a four year old girl from her home while her mother was at work, raped and killed her and disposed of her body. The State's case relied heavily upon the oral confessions of the appellant which led the officers to the body of the victim and subsequently to the blue panties she was wearing at the time of the offense and to the identification of the wrench which was used to inflict the fatal injuries.

Appellant did not testify.

█  At the outset we shall consider appellant's contention that the death penalty assessed him was cruel and unusual punishment. See Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The record reflects that on November 3, 1972, then Governor Preston Smith commuted the penalty from death to life imprisonment while the case was in the appellate process. Appellant's first contention has been rendered moot.

█  Next, in connection with the oral confessions, the appellant contends he "did not exercise a knowing, intelligent, and voluntary waiver of his privilege against self-incrimination as guaranteed by the Fifth Amendment to the United States Constitution and Art. I, Sec. 10 of the Texas Constitution."

At the separate hearing to determine the admissibility and voluntariness of the oral confessions it was shown that shortly after midnight on August 25, 1971, the appellant, accompanied by his attorney, Burns Parum, "surrendered" to the Grand Prairie Police Department at 12:55 a. m. The appellant was brought before Judge Ann King and warned in accordance with Article 15.17, Vernon's Ann.C.C.P., and told the magistrate that he understood his rights.[1]

Thereafter, between 1 and 3:30 a. m. Detectives Farnsworth and Murdock interrogated the appellant in the presence of his attorney. Murdock testified that at the conclusion of the interrogation he told the attorney he wished to interrogate the appellant further and the attorney stated he would return "in the morning." While Murdock could not remember the exact words used, it was his understanding that the attorney granted permission to interrogate the appellant in the absence of counsel.[2]

At 9:30 a. m. Murdock took appellant from his cell and interrogated him for approximately 30 minutes. About 10 a. m. the appellant asked for his counsel and Murdock found Attorney Parum outside the interrogation room. Appellant and his counsel conferred for a while and after Attorney Parum emerged and talked to Murdock appellant was returned to his cell.

About 10:25 a. m. appellant was again taken to the interrogation room by Captain Kenneth Burr, who knew the appellant and knew his father. Burr had been informed that the appellant had been accompanied by his attorney when he surrendered, but he apparently was unaware of the earlier interrogations. Burr administered the "blue card" warnings to the appellant, which was shown by the record[3] to correspond with

1. This warning was administered in the absence of appellant's counsel though he was present in the station house at the time.

2. While cross-examination sought to establish that Murdock was mistaken in his belief, Attorney Parum, who also represented the appellant at the trial, never testified nor was there any contradiction of Murdock's testimony.

3. After the officer's testimony that he had given the "blue card" warnings, the prosecution was careful to have him read into the

those required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The appellant indicated to Burr he understood his rights. After talking for some five to ten minutes, appellant asked for his counsel and Burr found Attorney Parum outside the interrogation room. Burr related that after appellant conferred with counsel he heard Attorney Parum ask the appellant if he was sure he knew what he was doing, informed him that he didn't "have to tell them anything" and warned him that "this is not going to help you any." Burr testified the appellant explained to his lawyer that his conscience was bothering him and he "just had to tell us" (officers). Thereafter, appellant informed Burr he would take the officers to the body of the victim. The attorney was offered the opportunity to go with them, but he declined the officers' offer.

Appellant led the officers to the location of the victim's body, which was unknown to the officers. Upon return to the police station, the appellant made an uninterrupted oral confession to Officer Murdock. It was reduced to writing, but not signed by the appellant. Subsequently, at 1:20 p. m. appellant led officers to the murder scene where he disposed of the panties worn by the victim before disposing of the body at another location. At the scene he described how he killed the victim and identified a wrench found in his car as the instrument with which he inflicted the fatal injuries.

The appellant did not testify or offer any evidence.

At the conclusion of the hearing, the careful trial judge entered findings of facts and conclusions of law finding the oral confessions to have been voluntarily given and admissible in evidence. The court expressly found that the appellant had been duly warned and had "knowingly, intelligently and voluntarily waived his rights."

Here the record reflects that the twenty-six year old appellant, who had twice before served prison terms, was warned in accordance with Article 15.17, Vernon's Ann.C.C.P., which included his right to silence. He indicated he understood his rights. Subsequently, without protest, he submitted to interrogation by the officers in company of his attorney. Upon further interrogation the next morning, he invoked his privilege against self-incrimination and requested to see his attorney. Captain Burr, unaware of the previous interrogations, warned him again of his rights in accordance with the Miranda decision. Once again he stated he understood his rights and demonstrated the same by again terminating the interview and asking for counsel. Despite his counsel's advice that he didn't "have to tell them anything" and it wouldn't help him, the appellant led the officers to the place where he had thrown the body and later to the murder scene.

When the "totality of the circumstances" is considered, we conclude the evidence is sufficient to show that the State discharged its burden and that the appellant made a constitutionally permissible waiver as required by Miranda. See McCandless v. State, 425 S.W.2d 636 (Tex.Cr.App. 1968); Easley v. State, 448 S.W.2d 490 (Tex.Cr.App.1970); Thomas v. State, 458 S.W.2d 817 (Tex.Cr.App.1970); Caraway v. State, 489 S.W.2d 106 (Tex.Cr.App. 1973).

Lastly, appellant complains of the admission into evidence of the fruits of crime uncovered by virtue of the oral confessions, since he contends that such oral confessions are void for the reasons discussed above. Since we have held the oral confessions to be valid and that a proper waiver of rights was shown, the contention is without merit.

The judgment is affirmed.

record the warnings on the card, had him identify the card as the one he used on the

date in question, and then had the card introduced into evidence.