**Moses Lopez GARCIA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 59621.**

Court of Criminal Appeals of Texas, En Banc.

April 11, 1979.

Rehearing Denied June 6, 1979.

**170**

Marvin O. Teague, Houston, for appellant.

Carol S. Vance, Dist. Atty., Michael C. Kuhn, Ron G. Woods, and R. P. Cornelius, Asst. Dist. Attys., Houston, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for capital murder. The jury answered affirmatively the special issues submitted under Article 37.071, Vernon's Ann.C.C.P., and accordingly, the punishment was assessed at death.

The sufficiency of the evidence at either the guilt-innocence or punishment phases of the trial is not challenged. The record reflects that in the early morning hours of September 26, 1974, appellant and Larry Johns entered a 7–11 convenience store in Houston. Connie Wilson and the deceased, David Lewis, were store attendants, working the night shift. The record further reflects that appellant threatened the two

store attendants with a gun, and took them to a back storeroom where he forced them to lie face down on the floor. During this time, Larry Johns emptied the cash register. Just before appellant and Johns left the store, appellant fired two shots at the store attendants as they lay on the floor; one shot struck the deceased in the head, causing his death, and the other shot went into a door just above Wilson's head. During the course of the robbery, John Harold, the night supervisor for the 7–11, entered the store and was also threatened with a pistol by appellant.

Appellant did not testify in his own behalf at either phase of the trial.

In his first ground of error, appellant contends that the trial court erred in failing to grant his motion to suppress. Appellant filed his motion to suppress a written confession and an oral statement, both made by him while in police custody. After a hearing, the trial court denied the motion and ruled both admissible. However, the record reflects that neither the written or the oral statement was offered into evidence by the State at trial. Therefore, we must assume that appellant now complains of the admission into evidence of a pistol which was found as a result of the oral statement made by appellant.

The record reflects that shortly after the offense was committed appellant and Larry Johns returned to their apartments, gathered together their possessions and left in appellant's car with Cindy Doris, Johns' girl friend. Doris testified that they were heading north to appellant's sister's house in Michigan or Minnesota.

At the hearing on the motion to suppress, Department of Public Safety Trooper Howard Alexander testified that he received a report of an automobile accident in Ellis County at about 9:50 a. m. on September 26th. He arrived at the scene a short time later and found appellant, Johns and Doris at the scene of this one-car accident. He testified that he asked who had been driving the car, to which appellant responded that he had been. Alexander stated that

both appellant and Johns appeared to be intoxicated at the scene. The three were taken to the nearby Ennis hospital. At the hospital, Alexander asked appellant whether he would submit to a blood test, which appellant did. Alexander testified that when appellant learned that he might be arrested for DWI he told the officer that he was not driving after all. At this time Johns admitted driving, and stated that he did not have a driver's license.

Officer Alexander left the hospital and returned to his office to make a report. He then went to a wrecker yard in Ferris, where the wrecked car had been towed, and searched part of the contents of the automobile. He stated that he and Ferris Police Chief Matthews found a baggie of marihuana inside a partially open suitcase in the car. They also observed radios, stereo receivers, stereo speakers and assorted other items in the back of the wrecked station wagon. Alexander then returned to his office where he issued citations to appellant for the offenses of possession of marihuana and permitting an unlicensed driver to operate a motor vehicle. Alexander testified that at this time he gave appellant his full *Miranda*[1] warnings and then placed him in the Ennis jail.

■ Wayne McCollum, Sheriff of Ellis County, testified that appellant was in his custody on September 27th. He stated that his records reflected that appellant had been taken before a magistrate at 8:30 a. m. on that date. Sheriff McCollum testified that his office had received a teletype from Houston placing a "hold" on appellant. He stated:

"A. We got a teletype from Houston placing a hold on the young man and I just asked him did he know what the hold was for and he said for armed robbery and then something about the wreck. And he told me that—that his gun was hid in some grass there where the car had the accident.

"Q. [Defense counsel]: He told you that without any prompting from you?

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

"A. I had no idea knowing anything about it.

"Q. You merely asked him what the hold was for when you got the message?

"A. That's right.

"Q. And he said it was for armed robbery and 'I'll show you where the gun is'?

"A. Yes, sir.

"Q. Did you ask him any questions?

"A. Then I took him before the Justice of the Peace, had him arraigned again.

"Q. Sir, I asked you did you ask him any questions?

"A. Oh, I couldn't recall offhand whether—it was just a conversation in the jail.

"Q. Did he volunteer any other information to you that you recall?

"A. Not that I recall, sir."

Sheriff McCollum testified that he immediately took appellant before a magistrate, where appellant was arraigned again. Appellant then led the sheriff and a deputy to the site of the automobile accident where the pistol had been left.

Upon examination by the State, the prosecutor asked Sheriff McCollum:

"Q. Where was the weapon found?

"A. In some weeds down in a ditch embankment.

"Q. Did the defendant show you where it was?

"A. Yes, sir.

"Q. Did you have any idea where it was before then?

"A. I didn't even know where the automobile had the wreck.

"Q. Do (sic) you know that there was a weapon before this defendant told you?

"A. No, sir, I had no idea."

At no time did appellant present any evidence whatsoever to controvert the testimony by the witnesses on this matter.

Appellant now appears to contend that his oral statement to Sheriff McCollum was inadmissible and that, as a result, the fruits of that statement, i. e., the pistol, were also inadmissible. See *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We hold that appellant's oral statement to Sheriff McCollum was admissible at trial and was not involuntary nor taken in violation of *Miranda* ; therefore, the pistol obtained as a result of it was properly admitted.

Article 38.22, 1(e), Vernon's Ann.C.C.P., in effect at the time of trial, provided that:

"1. The oral or written confession of a defendant made while the defendant was in jail or other place of confinement or in the custody of an officer shall be admissible if:

\* \* \* \* \* \*

"(e) It be made orally and the defendant makes a statement of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed." [2]

However, in spite of the language of our statute, it is clear that before *any* statement by the accused, made while in custody and as a result of interrogation, is admissible against the accused, then it must be shown to have been voluntarily made, and taken in compliance of *Miranda v. Arizona*, supra. As we stated in *Ochoa v. State*, 573 S.W.2d 796 (Tex.Cr.App.1978):

"A confession, in order to meet constitutional standards, must be both voluntary and taken in compliance with *Miranda*.

---

2. This provision has since been amended to provide in Sec. 3(a) that such oral statements are admissible for the purpose of impeachment, when they are electronically recorded in accordance with statutory requirements. However, Subsection 3(c) provides that Subsection (a) is inapplicable to statements which contain assertions of facts found to be true which conduce to establish the guilt of the accused. Thus, it appears that oral statements under Subsection (c) are admissible as direct evidence against the accused, providing constitutional requisites of voluntariness and waiver of 5th Amendment rights are met.

If it meets one requirement but not the other, it is still inadmissible. *Miranda* imposes rigid requirements in order to insure the voluntariness of a confession, and these requirements must themselves be satisfied in order for a confession to be admissible."

If we assume that appellant's statement to Sheriff McCollum was a confession, and if we assume, without so holding, that the statement was made in response to custodial interrogation, we nevertheless hold it admissible.

The voluntariness of the statement is demonstrated by the fact that the evidence shows that appellant volunteered the information about the pistol; it is uncontroverted that a statement from appellant concerning any details of the offense for which the "hold" was placed on him, was completely unsolicited by the sheriff. Further, once he made the statement about the pistol and its location, appellant was again taken before a magistrate where he was, for the third time, advised of his rights in relation to a criminal charge. After being so warned, appellant persisted in his desire to show the officers the location of the pistol. Thus, from a totality of the circumstances, we conclude that appellant's statement was voluntarily made. See Article 38.21, Vernon's Ann.C.C.P.; see *Roberts v. State*, 545 S.W.2d 157 (Tex.Cr.App.1977).

Further, in compliance with *Miranda v. Arizona*, supra, appellant had been warned of his right against self-incrimination and his right to counsel, once prior to his incarceration less than twenty-four hours before he made the statement, and once less than an hour before he volunteered the statement to Sheriff McCollum. Further, immediately after he made the statement, he was again taken before a magistrate and again warned of his rights as to that offense. Therefore, after being given his *Miranda* warnings three times in close proximity, appellant nevertheless persisted in taking the officers to the location of the pistol. Under the totality of these circumstances, it is clear that appellant knowingly and volun-

tarily waived the rights assured him by *Miranda v. Arizona*, supra. See *Castro v. State*, 562 S.W.2d 252 (Tex.Cr.App.1978); *Estes v. State*, 507 S.W.2d 216 (Tex.Cr.App. 1974); *Hughes v. State*, 506 S.W.2d 625 (Tex.Cr.App.1974); *Walker v. State*, 501 S.W.2d 912 (Tex.Cr.App.1973).

■ Therefore, we hold that the State met its burden of showing that the statement was voluntarily made and that appellant made a knowing and intelligent waiver of his *Miranda* rights before he made the statement and before he took the officers to the location of the pistol. Since we have held that the statement meets constitutional standards for admissibility, and since, in accordance with Article 38.22, the oral statement was an assertion of a fact which was found to be true and which led to the discovery of evidence which conduced to establish his guilt, the statement would have been admissible at appellant's trial. Since the statement would have been admissible, the fruits of it, i. e., the pistol, were likewise admissible. See *Wong Sun v. United States*, supra.

Appellant, in this ground of error, also complains of, but does not discuss the admission of a statement made by appellant in custody during his return from Ennis to Houston. In this statement, appellant told the Houston officers that the stereo speakers in his wrecked automobile were obtained in a burglary he committed "out on the Gulf Freeway." However, the record does not reflect that this statement was ever admitted into evidence at trial. Appellant also contends that the fruits of this statement should have also been suppressed. However, the record clearly reflects that there were no fruits of this statement. The items of property from appellant's wrecked automobile had already been seized prior to appellant's statement. Further, appellant did not challenge the legality of the search of his automobile and the subsequent seizure of property in either his motion to suppress or at trial wherein stereo speakers found in his car were introduced into evi-

dence.[3] Thus, appellant has shown no error.

This first ground of error is overruled.

■■■ In his second ground of error, appellant contends that the trial court committed fundamental error in charging the jury on the law of intoxication at the punishment phase of the trial. The record reflects that when the court submitted to the jury the special issues as required by Article 37.071, Vernon's Ann.C.C.P., it also charged the jury that voluntary intoxication could be considered in mitigation of punishment. See V.T.C.A. Penal Code, Sec. 8.04. The record reflects no objection to the charge; the acquiescence in and absence of an objection to the charge waives all but fundamental error. *Duffy v. State*, 567 S.W.2d 197 (Tex.Cr.App.1978); *Rummel v. State*, 509 S.W.2d 630 (Tex.Cr.App.1974). The charge in the instant case was clearly not fundamentally erroneous. The instruction to the jury on intoxication was very favorable to appellant, since it permitted the jury to mitigate punishment in answering the special issues.[4] This ground of error is overruled.

In his third ground of error, appellant contends that one prospective juror, Lucille

Jetter, was improperly excused in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 80 L.Ed.2d 776 (1968).[5] In *Moore v. State*, 542 S.W.2d 664 (Tex.Cr. App.1976), we held that it is unnecessary to consider the *Witherspoon* question where the prospective juror was disqualified under Sec. 12.31(b), V.T.C.A. Penal Code. Accord *Burns v. State*, 556 S.W.2d 270 (Tex.Cr.App. 1977); *Hughes v. State*, 562 S.W.2d 857 (Tex.Cr.App.1978); *Bodde v. State*, 568 S.W.2d 344 (Tex.Cr.App.1978). Section 12.31(b) provides:

"Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact."

■ The record reflects that during voir dire examination prospective juror Lucille Jetter expressed her general opposition to the death penalty. During the examination, the prosecutor asked:

"Q. Do you think your deep-seated feelings that we are talking about, that would make it where you would not be able to give the death penalty

---

3. A further discussion of the admissibility of the stereo speakers occurs in appellant's ground of error number fifteen.

4. In accordance with Article 37.071, supra, the jury was charged:
 "Do you find from the evidence beyond a reasonable doubt that the conduct of the defendant, Moses Garcia, that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result?"
 and,
 "Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Moses Garcia, would commit criminal acts of violence that would constitute a continuing threat to society?"

5. In *Witherspoon*, the Supreme Court of the United States stated:
 "Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or

religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected."
 The Court further stated:
 "Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position."
 The Court elaborated in *Boulden v. Holman*, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969):
 "[i]t is entirely possible that a person who has 'a fixed opinion against' or who does not 'believe in' capital punishment might nevertheless be perfectly able as a juror to abide by existing law—to follow conscientiously the instructions of a trial judge and to consider fairly the imposition of the death sentence in a particular case."
 Further, in *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976) the Court reaffirmed the *Witherspoon* doctrine and held that no death penalty can stand if a single venireman is excluded in violation of that doctrine.

would affect your decision as to whether or not to answer the questions yes or no?

"A. Yes.

"Q. And you think, therefore, since you don't feel like you could give the death penalty, you would answer the questions no so he would get life.

"A. Yes."

Thus, it is clear that Jetter's answer disqualified her under Section 12.31(b), supra, and that she was properly excused by the trial court. Although we do not need to reach the issue of Jetter's disqualification under *Witherspoon* in order to overrule appellant's ground of error, the record does reflect that she was also disqualified under that doctrine.

At the beginning of the voir dire examination, Jetter expressed her reservations about the imposition of the death penalty generally. During questioning by the prosecutor, she then stated that she could not, herself, answer the special issues in a way so that the death penalty could be imposed. Upon examination by the defense, Jetter wavered in her position and stated that under some facts she might be able to join with a jury in assessing the death penalty. Upon further examination by the State, she reaffirmed that she could not vote so as to impose the death penalty. She stated:

"A. That is my true feelings. I couldn't give it. I mean it . . .

"Q. . . . Could you, yourself, in that case, . . . answer the two questions yes and thereby assure the defendant would receive the death penalty and sign your signature on the space designated 'foreman'?

"A. I know I said no to you then. I said yes because of the way it sounded, but I—if it would be the death penalty and make the case so grotesque that the person deserved it, but it is like you say, signing my name to it and giving the man the death penalty, that is against my feelings.

\* \* \* \* \* \*

"I guess if all the evidence was there I could. Oh, I don't know. I just—I don't think I could. I just don't think I could.

\* \* \* \* \* \*

"Well, it is like you said, life or death. I could life—I could life. I could do that. I could say right off I could give a person life. I don't know, I couldn't do death, being that there is a choice.

"Q. Then we are back again to the general understanding that if you were the juror, yourself, if you were the person assessing the punishment, and answering the two questions, although it would be proper for somebody else to, you couldn't take part?

"A. No, that is what I said the first time and that is the way I feel.

"Q. That is what you stick with?

"A. That is the way I feel.

"Q. . . . would that mean you would automatically vote no, in any case, so that the person would receive life?

"A. That is right."

Upon further examination by the court, Jetter reaffirmed her position that she could not ever vote to impose the death penalty. Thus, the record reflects that the trial court properly sustained the State's challenge for cause to Jetter; there was no violation of the *Witherspoon* doctrine. Appellant's third ground of error is overruled.

■ In his fourth through eighth grounds of error, appellant contends that the trial court erred in sustaining the State's challenge for cause to prospective juror Orth B. Carlton under Article 35.-16(10), Vernon's Ann.C.C.P. Article 35.16, supra, provides:

"(a) A challenge for cause is an objection made to a particular juror, alleging some fact which renders him incapable or unfit to serve on the jury. A challenge for cause may be made by either the state or the defense

for any one of the following reasons:

&ast; &ast; &ast; &ast; &ast; &ast;

"10. That he cannot read or write."

Appellant first contends that this statute is unconstitutional, discriminatory and that it serves no legitimate ends. This contention was answered adversely to appellant in *Brock v. State*, 556 S.W.2d 309 (Tex.Cr.App. 1977), reaffirming the holding of *Hernandez v. State*, 506 S.W.2d 884 (Tex.Cr.App. 1974). This contention is overruled.

Appellant next contends that the trial court abused its discretion in sustaining the State's challenge for cause to prospective juror Carlton.

The record reflects that during the voir dire examination Carlton had incorrectly filled out the juror information card. He had put some information in the wrong blanks and had left information off of some blanks because he could not spell the names or words. He reiterated over and over that he had trouble filling out the card and that he did not understand the questions. Although he once stated that he thought that he could read and understand the court's charge, he stated that if the charge were as difficult as the juror information card, he would have difficulty in understanding it.

■ It is well settled that the conduct of the voir dire examination must rest largely within the sound discretion of the trial court. *Moore v. State*, 542 S.W.2d 664 (Tex. Cr.App.1976); *Abron v. State*, 523 S.W.2d 405 (Tex.Cr.App.1975); *Hernandez v. State*, supra. Upon the facts presented in this case, we cannot say that the trial court abused its discretion in sustaining the State's challenge to prospective juror Carlton under Article 35.16(10), supra. Grounds of error four through eight are overruled.

In his ninth ground of error, appellant contends that the trial court erred in refusing to grant appellant's oral motion for continuance made during the course of trial on guilt or innocence. The record reflects that, out of the presence of the jury, defense counsel asked the court to observe various injuries to appellant's face and head, consisting of "a badly swollen black and blue and red right eye and an abrasion on the right side of his face which has swollen his eye, which are clearly visible, and cuts and abrasions on his lower lip, which are clearly visible . . . ."

Bailiff Jim Duvall testified that when he and other bailiffs picked appellant up that morning none of them saw his facial condition; he stated, however, that appellant had been wearing large sunglasses. Duvall testified that he had been told that appellant had been beaten by some inmates in the jail last night before the guard could separate them. The court overruled appellant's motion. Before the jury was brought back in, counsel for appellant stated, "May we, on our motion, would His Honor mind, later, to have a color picture taken and have it introduced?" The court replied "He can certainly have it taken, if you desire to, and I will be glad to hear from you on the question of its presentation." However, nowhere in the record does there appear a photograph or further discussion of appellant's injuries.

■ A continuance after the trial has begun is authorized by Article 29.13, Vernon's Ann.C.C.P., when by some unexpected occurrence during the trial the applicant is so taken by surprise that a fair trial cannot be had; the motion is addressed to the sound discretion of the court. *Ewing v. State*, 549 S.W.2d 392 (Tex.Cr.App.1977); *Cooper v. State*, 509 S.W.2d 565 (Tex.Cr. App.1974); *Bradshaw v. State*, 482 S.W.2d 233 (Tex.Cr.App.1972). The failure to grant such a motion is not error unless there is a showing of an abuse of discretion. *Guerrero v. State*, 487 S.W.2d 729 (Tex.Cr. App.1972); *Cooper v. State*, supra; *Bradshaw v. State*, supra. Upon the record before this Court, we cannot hold that the trial court abused its discretion in denying the motion. This Court is simply unable to review the merits of appellant's contention, since nowhere in the record does there appear a photograph of appellant's injuries or a further sworn description thereof, and since appellant has made no showing that he was harmed. There is no evidence in the

record that the jurors noticed appellant's injuries or that they were in any way affected during their deliberations by appellant's appearance at either phase of the trial. Under these circumstances, we hold that appellant has failed to show that the trial court abused its discretion in denying the motion. See *Ewing v. State,* supra; *Cooper v. State,* supra; *Guerrero v. State,* supra; *Bradshaw v. State,* supra. This ground of error is overruled.

▆ In his next two related grounds of error, appellant contends that the trial court erred in admitting into evidence the autopsy report of Dr. Shelton Green and that it erred in admitting into evidence State's Exhibit Number 30, a bullet, as proper chain of custody had not been established.

At trial, Dr. Joseph Jachimczyk, Chief Medical Examiner for Harris County, testified from the contents of an autopsy report on the deceased prepared by Dr. Shelton Green, who had been working under his supervision. Since preparing the autopsy report, Dr. Green had moved to Nevada. Dr. Jachimczyk testified from the morgue ledger book that a bullet was recovered from the skull of the deceased, which bullet was labeled with Dr. Green's initial and a number, and thereafter delivered to (Detective) H. A. Zoch. The record further reflects that Dr. Jachimczyk testified from the contents of the autopsy report without objection by the defense.[6] In his testimony before the jury, Dr. Jachimczyk stated that autopsy reports prepared by others working under his supervision were kept in his office under his care, custody and control. Appellant's contentions that it was error for this pathologist to testify from the report of another and that, therefore, the report was inadmissible as hearsay have previously and consistently been rejected by this Court. *Denney v. State,* 558 S.W.2d 467 (Tex.Cr. App.1977); *Cato v. State,* 534 S.W.2d 135 (Tex.Cr.App.1976); *Whitfield v. State,* 492 S.W.2d 502 (Tex.Cr.App.1973); *Cuevas v.*

*State,* 456 S.W.2d 110 (Tex.Cr.App.1970); *Burrell v. State,* 446 S.W.2d 323 (Tex.Cr. App.1969).

▆ Appellant's related contention is that State's Exhibit # 30 was inadmissible as proper chain of custody was not proven. He contends that since Dr. Green, the pathologist who retrieved the bullet from the deceased's head, did not testify, the admission into evidence of the bullet was predicated upon the hearsay testimony of Dr. Jachimczyk. This contention is without merit.

Article 3737e, V.A.C.S., provides:

"Competence of record as evidence

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

(a) It was made in the regular course of business;

(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

Section 2. The identity and mode of preparation of the memorandum or record in accordance with the provisions of paragraph one (1) may be proved by the testimony of the entrant, custodian or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record. Such lack of personal knowledge may be shown to affect the weight and credibility of the memorandum or record but shall not affect its admissibility."

---

6. The record reflects that the autopsy report was admitted into evidence for the purposes of the record, out of the presence of the jury.

Dr. Jachimczyk testified from his morgue ledger book that this bullet was retrieved from the head of the deceased and delivered to H. A. Zoch.[7] He further testified that the entries in the ledger book are made at or near the time that the events transpired, made by a person having personal knowledge of the events which transpired, which entries are made in the regular course of business in the morgue.

This testimony was sufficient to bring the evidence from the morgue ledger book within the Business Records Exception to the Hearsay Rule. See *Broyles v. State*, 552 S.W.2d 144 (Tex.Cr.App.1977); *Lawless v. State*, 495 S.W.2d 241 (Tex.Cr.App.1973); *Coulter v. State*, 494 S.W.2d 876 (Tex.Cr. App.1973); *Mahaffey v. State*, 471 S.W.2d 801 (Tex.Cr.App.1971). The information was thus competent evidence of the first link in the chain of custody and furnished sufficient proof thereof. Grounds of error ten and eleven are overruled.

In his twelfth ground of error, appellant contends that the trial court erred in refusing to grant his motion in limine regarding the testimony of Dr. Jerome Brown at the punishment phase of the trial. Specifically, he contends that Dr. Brown's testimony, based upon an examination of appellant, violated appellant's right against self-incrimination. This contention was fully discussed and overruled in *Livingston v. State*, 542 S.W.2d 655 (Tex.Cr.App.1976). This holding was reaffirmed in *Shippy v. State*, 556 S.W.2d 246 (Tex.Cr.App.1977) and *Von Byrd v. State*, 569 S.W.2d 883 (Tex.Cr.App.1978).

Further, the record reflects that Dr. Brown testified that before he interviewed appellant he told appellant that he did not have to talk about anything if he did not wish to and that "anything he said might be held against him in court." Dr. Brown also testified out of the presence of the jury that appellant had understood the nature of the charge against him and that the death penalty was a possible punishment. Appellant's twelfth ground of error is overruled.

In his next two grounds of error, appellant contends that the trial court erred in admitting evidence of extraneous offenses at the punishment phase of the trial. The record at the hearing on punishment reflects that Armando Rangel operated a lounge in Houston. He was acquainted with appellant, as appellant used to frequent his establishment. He testified that on September 25th the lounge was vandalized and burglarized and that stereo speakers had been stolen. He further stated that on that day he had loaned appellant his truck and that later that afternoon he learned that his house had also been burglarized. He stated that his pistol, a tool box and money in a bank bag had been stolen. He then identified State's Exhibit # 17—the pistol recovered by police, speakers found in appellant's wrecked car, and a bank bag recovered from appellant's person, as his which had been stolen in the burglaries.

Cindy Doris, who had been with appellant and Larry Johns during their attempt to leave the state, testified that the stereo speakers had been in their car before the accident and identified the money bag as the one which appellant carried with him on that date. She also testified, without objection, to an admission by appellant that he got the speakers and money when "they burglarized a joint."

Appellant now contends that the court erred in permitting testimony of inadmissible extraneous offenses. We do not agree.

Article 37.071, Vernon's Ann.C.C.P. provides that at the punishment phase of a capital murder trial, "evidence may be presented *as to any matter* that the court deems relevant to sentence." (emphasis added) In construing this statute, we stated in *Jurek v. State*, 522 S.W.2d 934 (Tex. Cr.App.1975) that:

"In determining the likelihood that the defendant would be a continuing threat to society, the jury could consider whether the defendant had a significant criminal record. *It could consider the range*

---

7. This is the only link in the chain of custody which appellant attacks.

*and severity of his prior criminal conduct . . .* " (Emphasis added)

Thus, the trial court has wide discretion in admitting evidence at the punishment phase of a capital murder trial. See *Gholson and Ross v. State*, 542 S.W.2d 395 (Tex. Cr.App.1976); *Livingston v. State*, 542 S.W.2d 655 (Tex.Cr.App.1976); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976); *Robinson v. State*, 548 S.W.2d 63 (Tex.Cr. App.1977); *Brown v. State*, 554 S.W.2d 677 (Tex.Cr.App.1977).

In upholding the constitutionality of the Texas death penalty procedures, the Supreme Court of the United States wrote:

"Texas law requires that if a defendant has been convicted of a capital offense, the trial court must conduct a separate sentencing proceeding before the same jury that tried the issue of guilt. Any relevant evidence may be introduced at this proceeding . . . the Texas capital sentencing procedure guides and focuses the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender before it can impose a sentence of death . . . *What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine.* Texas law clearly assures that all such evidence will be adduced." (Emphasis added)

*Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).

Nothing in Article 37.071, supra, requires that there be a final conviction for an extraneous offense to be admissible at the punishment phase. Clearly, evidence of prior offenses falls within the range of "prior criminal conduct." Such "prior criminal conduct" is clearly relevant . to the jury's deliberations on special issue number two, submitted to the jury at the punishment phase. Therefore, we hold that the trial court did not err in admitting into evidence testimony concerning the burglary. Appellant's thirteenth and fourteenth grounds of error are overruled.

In his fifteenth ground of error, appellant contends that the trial court erred in admitting into evidence at the punishment phase the speakers and money bag, as they were obtained pursuant to an illegal search and seizure.[8] No such objection on this ground was made at trial or at the hearing on the motion to suppress. Therefore, nothing is presented for review. *Lejeune v. State*, 538 S.W.2d 775 (Tex.Cr.App. 1976); *Johnson v. State*, 504 S.W.2d 496 (Tex.Cr.App.1974). *Weatherspoon v. State*, 501 S.W.2d 909 (Tex.Cr.App.1973).

In appellant's final two grounds of error, he contends that the trial court erred in allowing John Harold and Connie Wilson to testify at the hearing on punishment. He contends that by the admission of their testimony concerning the circumstances of the offense, to which they were witnesses, the State was allowed to "retry" its case. Appellant's contention that this was error is without merit. The circumstances of the offense and the facts surrounding it are probative evidence regarding the special issues. *Duffy v. State*, 567 S.W.2d 197 (Tex. Cr.App.1978); *Brock v. State*, 556 S.W.2d 309 (Tex.Cr.App.1977). This testimony was probative, relevant and, therefore, admissible. This ground of error is overruled.

The judgment is affirmed.

ROBERTS, Judge, concurring.

While I concur in the affirmance of the judgment, I would approach differently the question of proving unadjudicated, extraneous offenses in the "sentencing proceeding" of a capital case.

The majority is correct in concluding that Article 37.071(a) of the Texas Code of Criminal Procedure would admit such offenses. This conclusion should rest on more than two emphasized phrases from *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App.1975) and *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).

---

8. Appellant also complains of the admission into evidence of some pool balls. However, the record reflects that these items were not admitted into evidence.

Article 37.071(a) of the Texas Code of Criminal Procedure was added by a Senate amendment to H.B. 200 in the 63rd Texas Legislature. See "Comment, House Bill 200," 11 Houston Law Review 410 (1974). The amendment seems to have been based on Section 921.141 of Florida Statutes Annotated (Supp.1979), which was passed hastily by a special session of the Florida Legislature, called in response to *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). See Erhardt & Levinson, "Florida's Legislative Response to *Furman*," 64 Journal of Criminal Law & Criminology 10 (1973). The Florida statute, in turn, largely is copied from Section 210.6 of the Model Penal Code. The comments to this source provision appear in Tentative Draft No. 9 (1959), and shed light on the question.

The drafters of the Model Penal Code chose a bifurcated trial procedure for capital cases to avoid "an inescapable dilemma if the jury is called upon to pass on sentence at the same time that it reaches a verdict as to guilt or innocence. Either the determination of the punishment must be based on less than all the evidence that has a bearing on that issue, such for example as a previous criminal record of the accused, or evidence must be admitted on the ground that it is relevant to sentence, though it would be excluded as irrelevant or prejudicial with respect to guilt or innocence alone. . . . The obvious solution . . . is to bifurcate the proceeding, abiding strictly by the rules of evidence until and unless there is a conviction, but once guilt has been determined opening the record to the further information that is relevant to sentence." American Law Institute, Model Penal Code 74–75 (Tentative Draft No. 9 1959).

The cited sections of the Model Penal Code and the Florida statutes accomplish this opening of the record by providing, "Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is afforded a fair opportunity to rebut any hearsay statements." The Texas Legislature chose to omit this sentence from Article 37.071(a), and this must evince its intention that the general rules of evidence continue to apply in these proceedings.

But the very choice of this bifurcated procedure also evinces an intention that evidence that would be inadmissible at the guilt stage should be admitted in these proceedings. This is so because the dangers of confusion of, and prejudice to, the issue of guilt have passed, and because of the constitutional compulsion to give the capital jury as much relevant information as is possible. I can agree that this intention would justify the admission of extraneous offenses, even unadjudicated ones. (If the Legislature wanted to limit the evidence to convictions, it could do as it has done in Article 37.07, Section 3(a), of the Texas Code of Criminal Procedure.)

But this cannot be the end of the issue. For, in addition to the dangers of confusion and prejudice, there is a third reason why evidence law has excluded proof of extraneous offenses: unfair surprise. J. Wigmore, Evidence, Section 55 (3rd ed. 1940). And, in addition to the constitutional compulsion to give the capital jury as much relevant information as possible, there is a constitutional compulsion to give the capital defendant due process (and due course) of law. Article 37.071 should not be construed as authorizing proof of unadjudicated, extraneous offenses if this comes as an unfair surprise to the defendant. Notice, a fundamental element of due process, must be provided. Allowing proof of unadjudicated, extraneous offenses comes close to allowing one or more "prosecutions" of the defendant in the sentencing proceeding. Simple fairness requires that the defendant be given notice that the State intends to offer proof of unadjudicated,[1] extraneous offenses, so that the defendant and his coun-

---

1. Proof of prior convictions should present no problem of notice, for the defendant should be aware of such convictions, and records of convictions are easily discoverable by counsel. The same cannot be said of unadjudicated, extraneous offenses.

sel can investigate and prepare a response.[2] Trial judges should be mindful of this notice problem when they exercise the "wide discretion in admitting evidence" mentioned by the majority; this discretion may not transgress on state and federal constitutional rights.

In this case, the record shows that the appellant and his counsel had actual notice of the State's intention to offer proof of the extraneous offense. Counsel made a motion in limine, and he did not seem to be surprised. For these reasons I can concur in this affirmance.

PHILLIPS, J., joins in this opinion.

---

2. At least one jurisdiction requires such notice by statute. See Section 27–2053 of Georgia Code Annotated.