

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1596-12

**JAMES GARZA, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

**COCHRAN, J., filed a concurring opinion in which ALCALA, J., joined.**

### CONCURRING OPINION

I agree with the majority that James Garza is entitled to relief under *Miller v.
Alabama*[1] even though he, like Terrell Maxwell, did not object to his automatic life-without-
parole sentence on Eighth Amendment grounds at trial. I write separately to point out that
this result is neither novel or untoward.

---

[1] 567 U.S. ___, 132 S.Ct. 2455 (2012).

In *Furman v. Georgia*,[2] the Supreme Court held that the imposition and carrying out of the death penalty, under all then-existing capital-sentencing schemes, constituted cruel and unusual punishment in violation of the Eighth Amendment.  The Texas Governor immediately commuted all death sentences for Texas inmates.[3]  But suppose he hadn't.  Would we, on direct appeal of death sentences after *Furman*, have rejected a *Furman* claim as forfeited because the defendant failed to raise an Eighth Amendment claim at trial?  Of course not.  That would have been both absurd and manifestly unjust.  As pointed out by Justice Powell in his *Furman* dissent, "Whatever uncertainties may hereafter surface, several of the consequences of today's decision are unmistakably clear.  The decision is plainly one of the greatest importance.  The Court's judgment removes the death sentences previously imposed on some 600 persons awaiting punishment in state and federal prisons throughout the country."[4]  The same logic (and law) applies here.

The Supreme Court held, in *Griffith v. Kentucky*,[5] that the failure to apply a newly

---

[2] 408 U.S. 238 (1972).

[3]  *See* Texas Department of Criminal Justice, Death Row Facts, http://www.tdcj.state.tx.us/death_row_dr/facts.html ("When capital punishment was declared 'cruel and unusual punishment' by the U.S. Supreme Court on June 29, 1972, there were 45 men on death row in Texas and 7 in county jails with a death sentence.  All of the sentences were commuted to life sentences by the Governor of Texas, and death row was clear by March 1973."); *see, e.g.*, *Curry v. State*, 513 S.W.2d 819 (1974); *Short v. State*, 511 S.W.2d 288 (1974); *Hughes v. State*, 506 S.W.2d 625 (1974); *Stultz v. State*, 500 S.W.2d 853 (1973); *Ex parte Enriquez*, 490 S.W.2d 546 (1973); *Hall v. State*, 488 S.W.2d 94 (1972); *Antwine v. State*, 486 S.W.2d 578 (1972).

[4] *Furman*, 408 U.S. at 416-17 (Powell, J., dissenting).

[5] 479 U.S. 314, 322  (1987).

declared constitutional rule to criminal cases not yet final violates basic norms of constitutional adjudication. As we explained in *Taylor v. State*,[6]

> the [*Griffith*] Court criticized as arbitrary the practice of "simply fishing one case from the stream of appellant review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by the new rule." The Court also criticized limited prospectivity as inequitable, violating "the principle of treating similarly situated defendants the same." Consequently, the Supreme Court held that a newly announced constitutional rule for conducting criminal prosecutions must be applied retroactively to all cases, state or federal, pending on direct review or not yet final when the rule was announced.[7]

This limited retroactivity principle is at the heart of *Teague*: Limited retroactivity must be given as a matter of course to new constitutional rules announced by the United States Supreme Court.[8] That is, when a new rule is announced by that Court, it must be applied to all cases still pending on direct review in the state system.[9] As we noted in *Taylor*, both *Griffith* and *Teague* bind Texas when dealing with new constitutional rules.[10]

---

[6] 10 S.W.3d 673 (Tex. Crim. App. 2000).

[7] *Id.* at 678 (citations omitted).

[8] *Teague v. Lane*, 489 U.S. 288, 304 (1989).

[9] *Id.* ("[T]he 'failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication.'") (quoting *Griffith*, 479 U.S. at 322).

[10] *Taylor*, 10 S.W.3d at 678-79. Texas is free to apply more generous retroactivity laws–but not more restrictive ones. *Danforth v. Minnesota*, 552 U.S. 264 (2008) (*Teague* does not constrain the authority of state courts to give broader effect to new rules of criminal procedure); *State v. Smart*, 202 P.3d 1130, 1136 (Alaska 2009) ("*Danforth* . . . allows us to apply either the *Teague* test for full retroactivity or a state constitutional test so long as the state test is at least as comprehensive as the federal test.").

The *Griffith* defendants preserved error at trial via objections, but Garza is entitled to relief under the *Griffith* retroactivity rule even though his Eighth Amendment claim was not preserved at trial. Why? Because it wasn't the law at the time of trial. We do not expect attorneys to be clairvoyant and foresee new constitutional rules before they are announced in assessing their performance.[11] Even the Supreme Court reviews "forfeited" claims that rely on new constitutional rules–rules like those announced in *Apprendi*[12] and *Gaudin*[13]–for plain error.[14] These are newly announced foundational constitutional rights that, like those category-one rights in *Marin v. State*,[15] are not forfeited by the failure to object at trial.

---

[11] *See Ex parte Chandler*, 182 S.W.3d 350, 358-60 (Tex. Crim. App. 2005) (noting that "a bar card does not come with a crystal ball attached" and holding that "counsel's performance will be measured against the state of the law in effect during the time of trial and we will not find counsel ineffective where the claimed error is based upon unsettled law") (citation and internal quotation marks omitted).

[12] *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt).

[13] *United States v. Gaudin*, 515 U.S. 506 (1995) (materiality of a false statement must be decided by a jury rather than a trial judge).

[14] *United States v. Cotton*, 535 U.S. 625 (2002) (applying plain-error test to a case pending on appeal when the new rule in *Apprendi* was announced); *Johnson v. United States*, 520 U.S. 461 (1997) (applying plain-error test to a case pending on appeal when the new rule in *Gaudin* was announced). *See Cotton*, 535 U.S. at 631-32 (under the plain-review test, "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.").

[15] 851 S.W.2d 275, 278-79 (Tex. Crim. App. 1993) (category-one rights are those that cannot be forfeited by inaction or waived because they are "widely considered so fundamental to the proper functioning of our adjudicatory process" that they are "absolute rights").

The Supreme Court, like this Court, excuses procedural default in such cases because to not do so would be manifestly unjust.  The logic is laid out in Reed v. Ross:[16]

> [T]he failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the [cause] requirement is met.  If counsel has no reasonable basis upon which to formulate a constitutional question . . .  it is safe to assume that he is sufficiently unaware of the question's latent existence that we cannot attribute to him strategic motives of any sort. . . . Accordingly, we hold that where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures.[17]

Appellant would be entitled to relief under *Miller* even if we had not held, in *Ex parte Maxwell*, that *Miller* was fully retroactive as a *Teague* exception.  And if new constitutional rules subject to limited retroactivity under *Teague*–like *Apprendi* and *Gaudin*–apply to cases pending on direct appeal regardless of whether there was an objection at trial, surely new substantive constitutional rules subject to full retroactivity under a *Teague* exception–like *Miller, Graham, Kennedy, Roper, Atkins* and *Thompson*[18]–must apply to like cases when the

---

[16] 468 U.S. 1 (1984).

[17] *Id*. at 15-16.  We have the same rule: The contemporaneous-objection rule does not apply to fundamental constitutional rights–*Marin* category-one rights–that were not recognized at the time of trial.  *See Sanchez v. State*, 120 S.W.3d 359, 367 (Tex. Crim. App. 2003) ("The 'right not recognized' exception to the contemporaneous-objection rule relates to a kind of fundamental error that is contrary to a specific act of the legislature"; noting that this exception generally applied only to category-one or category-two *Marin* claims).

[18] *Miller v. Alabama*, 567 U.S. ___, 132 S.Ct. 2455 (2012) (holding that the Eighth Amendment prohibits a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders); *Graham v. Florida*, 560 U.S. 48 (2010) (holding that a sentence of life imprisonment without parole for a non-homicide juvenile offender violates the Eighth Amendment); *Kennedy v. Louisiana,* 554 U.S. 407 (2008) (holding that a death sentence for a non-homicide offender is unconstitutional); *Roper v. Simmons*, 543 U.S. 551 (2005) (holding that a death sentence for a juvenile offender is unconstitutional); *Atkins v. Virginia*, 536 U.S. 304

right to relief is clear.

As we noted in *Ex parte Maxwell*, these "categorical ban" cases striking down sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty turn on status (juvenile, mental retarded individual) or crime (non-homicide). They are not dependant upon a trial objection for the same reason that they are fully retroactive:[19] Failure to apply them carries a significant risk that a defendant faces a punishment that the law cannot impose upon him because of his status or offense.

This significant risk explains why courts, including this one, uniformly review claims based on new substantive constitutional rules that have been "forfeited" or procedurally defaulted in some manner.[20] For example, once the Supreme Court held that those who are "mentally retarded" or "intellectually disabled" are exempt from the death penalty,[21] we did

---

(2002) (holding the Constitution places a substantive restriction on the State's power to take the life of a mentally retarded offender); *Thompson v. Oklahoma*, 487 U.S. 815 (1988) (holding that a death sentence for juvenile offender who was younger than 16 at time of the offense is unconstitutional).

[19] *Ex parte Maxwell*, 424 S.W.3d 66, 74 & n. 38 (Tex. Crim. App. 2014) (noting *Graham*, *Roper*, and *Atkins* are all applied retroactively)*; See In re Sparks*, 657 F.3d 258, 261–62 (5th Cir. 2011).

[20] *Ex parte Blue*, 230 S.W.3d 151 (Tex. Crim. App. 2007) (petitioner was entitled to merits review of *Atkins* claim raised for first time in successive petition if he could make threshold showing that no rational juror would have found that he was not mentally retarded); *Rogers v. State*, 267 P.3d 802, 803 (Nev. 2011) (*Graham* applies retroactively, and so provides good cause to excuse procedural default); *Bowling v. Commonwealth*, 163 S.W.3d 361, 372-73 (Ky. 2005) (applying "miscarriage of justice" exception to procedurally barred *Atkins* claim); *Head v. Hill*, 587 S.E.2d 613, 620 (Ga. 2003) (same)*.

[21] *Atkins v. Virginia*, 536 U.S. 304 (2002).

not reject mental retardation claims merely because the defendant had not raised that claim at trial.[22]  None of those death-row inmates who brought an *Atkins* claim at the next possible opportunity, usually an original or subsequent habeas corpus application, were summarily rejected merely because they had not raised the claim at trial.  Indeed, Article 11.071, § 5, explicitly provides for a subsequent habeas application based on new law and new constitutional rules.[23]

Courts that have addressed the effect of *Miller v. Alabama*, on cases tried before *Miller*, but not yet final, have consistently rejected claims that the *Miller* issue was forfeited by a failure to object at trial.  In *People v. Gutierrez*,[24] the California Supreme Court remarked that it was not surprising that Gutierrez failed to raise an Eighth Amendment claim at trial "because at the time the high court had not yet granted review in *Miller* and no court had even held that a mandatory sentence of life without parole for juveniles convicted of homicide was unconstitutional."[25]  The Arkansas Supreme Court, in *Whiteside v. State*,[26] noted that the State's argument that the *Miller* claim had been forfeited "ignores precedent holding that when a Supreme Court decision results in a 'new rule,' that rule applies to all

---

[22]  *See Ex parte Briseno*, 135 S.W.3d 1, 3 (Tex. Crim. App. 2004) (applying *Atkins* retroactively and addressing merits of mental retardation claim first raised on a subsequent writ of habeas corpus).

[23]  TEX. CODE CRIM. PROC. art. 11.071, § 5(a)(1).

[24]  ___ P.3d ___, 2014 WL 1759582 (Cal. 2014).

[25]  *Id.* at *8.

[26]  ___ S.W.3d ___ , 2013 WL 1773572 (Ark. 2013).

criminal cases still pending on direct review."[27]  Courts in Pennsylvania[28] and Colorado[29] agree–citing the principles, respectively, of the non-forfeitability of an illegal sentence, efficiency, and judicial economy.

We have said that the failure to object on Eighth Amendment grounds at trial forfeits review of the claim on appeal.[30]  But that forfeiture rule does not apply when the Supreme Court has just announced a new Eighth Amendment categorical right.  When the Supreme Court outlines certain categorical Eighth Amendment rules–we cannot execute the mentally retarded; we cannot execute juveniles; we cannot execute non-homicide offenders; we cannot sentence juveniles who have not committed a homicide to life without parole; we cannot automatically sentence a juvenile convicted of homicide to life without parole–those fundamental or "category one" rules apply retroactively and without regard to the normal

---

[27] *Id.* at *5.

[28] *Commonwealth v. Brown*, 71 A.3d 1009, 1016 (Pa. Sup. Ct. 2013) (noting that, in *Commonwealth v. Peterson*, 67 A.3d 789 (Pa. 2013), the Pennsylvania Supreme Court implicitly recognized that a challenge to the constitutionality of a mandatory sentence of life in prison without the possibility of parole for a juvenile challenges the legality of the sentence and thus cannot be waived).

[29] *People v. Banks*, ___ P.3d ___, 2012 WL 4459101, *18-20 (Colo.  Ct. App. 2012) (addressing defendant's "forfeited" constitutional challenge "because (1) it can be reviewed as a matter of law apart from a fully developed factual record; (2) the remedy for the error would be merely vacating the sentence in part and remanding for resentencing, not reversing and ordering a retrial; and (3) the purpose of conserving judicial resources by affording the trial court an opportunity to correct error and thereby avoid a retrial does not apply here, as defendant could not have raised a challenge under *Miller* prior to sentencing since the case had not been decided then") (citation omitted).

[30] *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995).

rules of procedural default.  We do this to ensure judicial integrity and to avoid the spectacle of a manifest miscarriage of justice.

With these remarks, I respectfully concur in the Court's judgment.

Filed: June 11, 2014
Publish