**Ex parte Juan Rudy ENRIQUEZ.**

**No. 46450.**

Court of Criminal Appeals of Texas.

Feb. 21, 1973.

Peter Torres, Jr., San Antonio, for appellant.

J. Taylor Brite, Dist. Atty., Jourdanton, and Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

MORRISON, Judge.

Petitioner, an inmate of the Department of Corrections, prays for release. We deny.

A brief history of petitioner's case reveals the following:

1. Petitioner was convicted and sentenced to the death penalty in Karnes County on October 19, 1966. Notice of appeal was given, and the conviction was affirmed on appeal. See Enriquez v. State, Tex.Cr.App., 429 S.W.2d 141.

2. On July 19, 1968, petitioner was first received in the Texas Department of Corrections, to be incarcerated on the Death Row Unit.

3. Petitioner was convicted, on a plea of guilty, of the offense of murder in Wilson County and assessed a 99 year prison term on October 21, 1969. No appeal of this conviction was taken.

4. On June 29, 1972, the United States Supreme Court declared that the death penalty was a void sentence, and in effect, vacated and remanded all death penalty sentences to State courts for further consideration. See Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346. In response to the mandate of Furman, supra, the Court of Criminal Appeals of Texas determined that the Governor possessed the power under the Constitution of the State to commute all death penalty sentences. See Whan v. State, Tex.Cr.App., 485 S.W.2d 275.

5. On August 31, 1972, petitioner's death penalty conviction was commuted to life by the Honorable Preston Smith, Governor of the State of Texas, in Proclamation Order No. 72–3662.

This Court set this application for hearing on the following limited issues:

■ 1. Are the provisions of Article 6184*l*, Vernon's Ann.Civ.St., mandatory as to application to inmates who are "in custody" of the Texas Department of Corrections, but are incarcerated within the Texas Department of Corrections on the "Death Row Unit", under circumstances where, prior to the decision of the United States Supreme Court in Furman v. Georgia, supra, these death row inmates were not receiving any time credit toward the discharge of their sentences?

We answer this question in the affirmative.

■ 2. Are all inmates whose sentences of death have been commuted by the Governor of Texas entitled to "good time" credit consideration under Article 6184*l*, supra, from the time of their admission to the Texas Department of Corrections, or do the provisions of Article 6184*l*, supra, go into effect only *after* the Governor's commutation order goes into effect?

We answer this question that petitioner is entitled to credit from the time of his admission to the Department of Corrections. In Ex parte Freeman, Tex.Cr.App., 486 S.W.2d 556, we said:

"We find that petitioner is entitled to credit on his commuted sentence for these two periods of confinement, because the legal effect of his commutation was to treat his sentence as though it had *originally* been for the commuted term." [Emphasis Ours]

See also State ex rel. Murphy v. Wolfer, 127 Minn. 102, 148 N.W. 896. Compare In re McMahon, 125 N.C. 38, 34 S.E. 193.

■ 3. And, are these commuted inmates entitled to mandatory assessment of full "good time" privileges under Article 6184*l*, supra, or, are these inmates merely entitled to consideration for "good time" credit pursuant to the normal rules and regulations of the administration of the Texas Department of Corrections' disciplinary system which allows a denial of "good time" credits depending on an inmate's conduct within the institution?

We answer this question that while a commuted inmate is entitled to "good time" credit pursuant to the normal rules and regulations of the Department of Corrections' disciplinary system, his "good time" credit accrued before commutation may be

forfeited, subject to the disciplinary procedures outlined in Article 6184*l*, supra.

Since petitioner is not entitled to release under the above commutation the application for writ of habeas corpus is denied. However, the Department of Corrections will be guided by the above pronouncements in petitioner's case as well as others where the same are applicable.