IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1596-12






JAMES GARZA, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


BEXAR COUNTY





 Cochran, J., filed a concurring opinion in which Alcala, J., joined.


CONCURRING OPINION 



 I agree with the majority that James Garza is entitled to relief under Miller v.
Alabama (1) even though he, like Terrell Maxwell, did not object to his automatic life-without-parole sentence on Eighth Amendment grounds at trial. I write separately to point out that
this result is neither novel or untoward.

 In Furman v. Georgia, (2) the Supreme Court held that the imposition and carrying out
of the death penalty, under all then-existing capital-sentencing schemes, constituted cruel and
unusual punishment in violation of the Eighth Amendment. The Texas Governor
immediately commuted all death sentences for Texas inmates. (3) But suppose he hadn't. 
Would we, on direct appeal of death sentences after Furman, have rejected a Furman claim
as forfeited because the defendant failed to raise an Eighth Amendment claim at trial? Of
course not. That would have been both absurd and manifestly unjust. As pointed out by
Justice Powell in his Furman dissent, "Whatever uncertainties may hereafter surface, several
of the consequences of today's decision are unmistakably clear. The decision is plainly one
of the greatest importance. The Court's judgment removes the death sentences previously
imposed on some 600 persons awaiting punishment in state and federal prisons throughout
the country." (4) The same logic (and law) applies here.

 The Supreme Court held, in Griffith v. Kentucky, (5) that the failure to apply a newly
declared constitutional rule to criminal cases not yet final violates basic norms of
constitutional adjudication. As we explained in Taylor v. State, (6) 

 the [Griffith] Court criticized as arbitrary the practice of "simply fishing one
case from the stream of appellant review, using it as a vehicle for pronouncing
new constitutional standards, and then permitting a stream of similar cases
subsequently to flow by unaffected by the new rule." The Court also criticized
limited prospectivity as inequitable, violating "the principle of treating
similarly situated defendants the same." Consequently, the Supreme Court held
that a newly announced constitutional rule for conducting criminal
prosecutions must be applied retroactively to all cases, state or federal, pending
on direct review or not yet final when the rule was announced. (7)

 This limited retroactivity principle is at the heart of Teague: Limited retroactivity
must be given as a matter of course to new constitutional rules announced by the United
States Supreme Court. (8) That is, when a new rule is announced by that Court, it must be
applied to all cases still pending on direct review in the state system. (9) As we noted in Taylor,
both Griffith and Teague bind Texas when dealing with new constitutional rules. (10) The Griffith defendants preserved error at trial via objections, but Garza is entitled to
relief under the Griffith retroactivity rule even though his Eighth Amendment claim was not
preserved at trial. Why? Because it wasn't the law at the time of trial. We do not expect
attorneys to be clairvoyant and foresee new constitutional rules before they are announced
in assessing their performance. (11) Even the Supreme Court reviews "forfeited" claims that
rely on new constitutional rules-rules like those announced in Apprendi (12) and Gaudin (13)-for
plain error. (14) These are newly announced foundational constitutional rights that, like those
category-one rights in Marin v. State, (15) are not forfeited by the failure to object at trial. 

 The Supreme Court, like this Court, excuses procedural default in such cases because
to not do so would be manifestly unjust. The logic is laid out in Reed v. Ross: (16)

 [T]he failure of counsel to raise a constitutional issue reasonably unknown to
him is one situation in which the [cause] requirement is met. If counsel has no
reasonable basis upon which to formulate a constitutional question . . . it is
safe to assume that he is sufficiently unaware of the question's latent existence
that we cannot attribute to him strategic motives of any sort. . . . Accordingly,
we hold that where a constitutional claim is so novel that its legal basis is not
reasonably available to counsel, a defendant has cause for his failure to raise
the claim in accordance with applicable state procedures. (17)

 

Appellant would be entitled to relief under Miller even if we had not held, in Ex parte
Maxwell, that Miller was fully retroactive as a Teague exception. And if new constitutional
rules subject to limited retroactivity under Teague-like Apprendi and Gaudin-apply to cases
pending on direct appeal regardless of whether there was an objection at trial, surely new
substantive constitutional rules subject to full retroactivity under a Teague exception-like
Miller, Graham, Kennedy, Roper, Atkins and Thompson (18)-must apply to like cases when the
right to relief is clear. 

 As we noted in Ex parte Maxwell, these "categorical ban" cases striking down
sentencing practices based on mismatches between the culpability of a class of offenders and
the severity of a penalty turn on status (juvenile, mental retarded individual) or crime (non-homicide). They are not dependant upon a trial objection for the same reason that they are
fully retroactive: (19) Failure to apply them carries a significant risk that a defendant faces a
punishment that the law cannot impose upon him because of his status or offense. 

 This significant risk explains why courts, including this one, uniformly review claims
based on new substantive constitutional rules that have been "forfeited" or procedurally
defaulted in some manner. (20) For example, once the Supreme Court held that those who are
"mentally retarded" or "intellectually disabled" are exempt from the death penalty, (21) we did
not reject mental retardation claims merely because the defendant had not raised that claim
at trial. (22) None of those death-row inmates who brought an Atkins claim at the next possible
opportunity, usually an original or subsequent habeas corpus application, were summarily
rejected merely because they had not raised the claim at trial. Indeed, Article 11.071, § 5,
explicitly provides for a subsequent habeas application based on new law and new
constitutional rules. (23)

 Courts that have addressed the effect of Miller v. Alabama, on cases tried before
Miller, but not yet final, have consistently rejected claims that the Miller issue was forfeited
by a failure to object at trial. In People v. Gutierrez, (24) the California Supreme Court
remarked that it was not surprising that Gutierrez failed to raise an Eighth Amendment claim
at trial "because at the time the high court had not yet granted review in Miller and no court
had even held that a mandatory sentence of life without parole for juveniles convicted of
homicide was unconstitutional." (25) The Arkansas Supreme Court, in Whiteside v. State, (26)
noted that the State's argument that the Miller claim had been forfeited "ignores precedent
holding that when a Supreme Court decision results in a 'new rule,' that rule applies to all
criminal cases still pending on direct review." (27) Courts in Pennsylvania (28) and Colorado (29)
agree-citing the principles, respectively, of the non-forfeitability of an illegal sentence,
efficiency, and judicial economy.

 We have said that the failure to object on Eighth Amendment grounds at trial forfeits
review of the claim on appeal. (30) But that forfeiture rule does not apply when the Supreme
Court has just announced a new Eighth Amendment categorical right. When the Supreme
Court outlines certain categorical Eighth Amendment rules-we cannot execute the mentally
retarded; we cannot execute juveniles; we cannot execute non-homicide offenders; we cannot
sentence juveniles who have not committed a homicide to life without parole; we cannot
automatically sentence a juvenile convicted of homicide to life without parole-those
fundamental or "category one" rules apply retroactively and without regard to the normal
rules of procedural default. We do this to ensure judicial integrity and to avoid the spectacle
of a manifest miscarriage of justice.

 With these remarks, I respectfully concur in the Court's judgment.

Filed: June 11, 2014

Publish


 
1. 567 U.S. ___, 132 S.Ct. 2455 (2012).
2. 408 U.S. 238 (1972).
3. See Texas Department of Criminal Justice, Death Row Facts,
http://www.tdcj.state.tx.us/death_row_dr/facts.html ("When capital punishment was declared
'cruel and unusual punishment' by the U.S. Supreme Court on June 29, 1972, there were 45 men
on death row in Texas and 7 in county jails with a death sentence. All of the sentences were
commuted to life sentences by the Governor of Texas, and death row was clear by March
1973."); see, e.g., Curry v. State, 513 S.W.2d 819 (1974); Short v. State, 511 S.W.2d 288 (1974);
Hughes v. State, 506 S.W.2d 625 (1974); Stultz v. State, 500 S.W.2d 853 (1973); Ex parte
Enriquez, 490 S.W.2d 546 (1973); Hall v. State, 488 S.W.2d 94 (1972); Antwine v. State, 486
S.W.2d 578 (1972).
4. Furman, 408 U.S. at 416-17 (Powell, J., dissenting).
5. 479 U.S. 314, 322 (1987).
6. 10 S.W.3d 673 (Tex. Crim. App. 2000).
7. Id. at 678 (citations omitted).
8. Teague v. Lane, 489 U.S. 288, 304 (1989).
9. Id. ("[T]he 'failure to apply a newly declared constitutional rule to criminal cases
pending on direct review violates basic norms of constitutional adjudication.'") (quoting Griffith,
479 U.S. at 322).
10. Taylor, 10 S.W.3d at 678-79. Texas is free to apply more generous retroactivity
laws-but not more restrictive ones. Danforth v. Minnesota, 552 U.S. 264 (2008) (Teague does
not constrain the authority of state courts to give broader effect to new rules of criminal
procedure); State v. Smart, 202 P.3d 1130, 1136 (Alaska 2009) ("Danforth . . . allows us to apply
either the Teague test for full retroactivity or a state constitutional test so long as the state test is
at least as comprehensive as the federal test.").
11. See Ex parte Chandler, 182 S.W.3d 350, 358-60 (Tex. Crim. App. 2005) (noting that
"a bar card does not come with a crystal ball attached" and holding that "counsel's performance
will be measured against the state of the law in effect during the time of trial and we will not find
counsel ineffective where the claimed error is based upon unsettled law") (citation and internal
quotation marks omitted).
12. Apprendi v. New Jersey, 530 U.S. 466 (2000) (other than the fact of a prior conviction,
any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be
submitted to a jury, and proved beyond a reasonable doubt).
13. United States v. Gaudin, 515 U.S. 506 (1995) (materiality of a false statement must be
decided by a jury rather than a trial judge).
14. United States v. Cotton, 535 U.S. 625 (2002) (applying plain-error test to a case
pending on appeal when the new rule in Apprendi was announced); Johnson v. United States,
520 U.S. 461 (1997) (applying plain-error test to a case pending on appeal when the new rule in
Gaudin was announced). See Cotton, 535 U.S. at 631-32 (under the plain-review test, "before
an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain,
and (3) that affects substantial rights. If all three conditions are met, an appellate court may then
exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the
fairness, integrity, or public reputation of judicial proceedings.").
15. 851 S.W.2d 275, 278-79 (Tex. Crim. App. 1993) (category-one rights are those that
cannot be forfeited by inaction or waived because they are "widely considered so fundamental to
the proper functioning of our adjudicatory process" that they are "absolute rights").
16. 468 U.S. 1 (1984).
17. Id. at 15-16. We have the same rule: The contemporaneous-objection rule does not
apply to fundamental constitutional rights-Marin category-one rights-that were not recognized at
the time of trial. See Sanchez v. State, 120 S.W.3d 359, 367 (Tex. Crim. App. 2003) ("The 'right
not recognized' exception to the contemporaneous-objection rule relates to a kind of fundamental
error that is contrary to a specific act of the legislature"; noting that this exception generally
applied only to category-one or category-two Marin claims).
18. Miller v. Alabama, 567 U.S. ___, 132 S.Ct. 2455 (2012) (holding that the Eighth
Amendment prohibits a sentencing scheme that mandates life in prison without possibility of
parole for juvenile offenders); Graham v. Florida, 560 U.S. 48 (2010) (holding that a sentence of
life imprisonment without parole for a non-homicide juvenile offender violates the Eighth
Amendment); Kennedy v. Louisiana, 554 U.S. 407 (2008) (holding that a death sentence for a
non-homicide offender is unconstitutional); Roper v. Simmons, 543 U.S. 551 (2005) (holding that
a death sentence for a juvenile offender is unconstitutional); Atkins v. Virginia, 536 U.S. 304
(2002) (holding the Constitution places a substantive restriction on the State's power to take the
life of a mentally retarded offender); Thompson v. Oklahoma, 487 U.S. 815 (1988) (holding that
a death sentence for juvenile offender who was younger than 16 at time of the offense is
unconstitutional).
19. Ex parte Maxwell, 424 S.W.3d 66, 74 & n. 38 (Tex. Crim. App. 2014) (noting
Graham, Roper, and Atkins are all applied retroactively); See In re Sparks, 657 F.3d 258, 261-62
(5th Cir. 2011).
20. Ex parte Blue, 230 S.W.3d 151 (Tex. Crim. App. 2007) (petitioner was entitled to
merits review of Atkins claim raised for first time in successive petition if he could make
threshold showing that no rational juror would have found that he was not mentally retarded);
Rogers v. State, 267 P.3d 802, 803 (Nev. 2011) (Graham applies retroactively, and so provides
good cause to excuse procedural default); Bowling v. Commonwealth, 163 S.W.3d 361, 372-73
(Ky. 2005) (applying "miscarriage of justice" exception to procedurally barred Atkins claim);
Head v. Hill, 587 S.E.2d 613, 620 (Ga. 2003) (same).
21. Atkins v. Virginia, 536 U.S. 304 (2002).
22. See Ex parte Briseno, 135 S.W.3d 1, 3 (Tex. Crim. App. 2004) (applying Atkins
retroactively and addressing merits of mental retardation claim first raised on a subsequent writ
of habeas corpus).
23. Tex. Code Crim. Proc. art. 11.071, § 5(a)(1).
24. ___ P.3d ___, 2014 WL 1759582 (Cal. 2014).
25. Id. at *8.
26. ___ S.W.3d ___ , 2013 WL 1773572 (Ark. 2013).
27. Id. at *5.
28. Commonwealth v. Brown, 71 A.3d 1009, 1016 (Pa. Sup. Ct. 2013) (noting that, in
Commonwealth v. Peterson, 67 A.3d 789 (Pa. 2013), the Pennsylvania Supreme Court implicitly
recognized that a challenge to the constitutionality of a mandatory sentence of life in prison
without the possibility of parole for a juvenile challenges the legality of the sentence and thus
cannot be waived).
29. People v. Banks, ___ P.3d ___, 2012 WL 4459101, *18-20 (Colo. Ct. App. 2012)
(addressing defendant's "forfeited" constitutional challenge "because (1) it can be reviewed as a
matter of law apart from a fully developed factual record; (2) the remedy for the error would be
merely vacating the sentence in part and remanding for resentencing, not reversing and ordering a
retrial; and (3) the purpose of conserving judicial resources by affording the trial court an
opportunity to correct error and thereby avoid a retrial does not apply here, as defendant could
not have raised a challenge under Miller prior to sentencing since the case had not been decided
then") (citation omitted). 
30. Curry v. State, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995).