REC'D IN COURT OF APPEALS
12th Court of Appeals District

AUG - 6 2015

TYLER TEXAS
CATHY S. LUSK, CLERK

FILED

8/6/2015

Twelfth Court of Appeals
Cathy Lusk
Clerk

No. 12-14-00016-CV

IN THE COURT OF APPEALS
TWELFTH COURT OF APPEALS DISTRICT
TYLER, TEXAS

| | | |
|---|---|---|
| JUAN ENRIQUEZ, Appellant, | § § § | APPEAL FROM THE 3RD |
| v. | § § § | JUDICIAL DISTRICT COURT |
| RICK THALER, ET AL., Appellees. | § § | ANDERSON COUNTY, TEXAS |

APPELLANT'S MOTION FOR REHEARING

TO THE HONORABLE JUDGES OF SAID COURT:

Juan Enriquez, Appellant, pursuant to Rule 49.1, Tex.R.App.P, moves the Court for a rehearing, averring as grounds the following:

## I. JURISDICTION

1. The Record Facts:

The basis of this appeal is the Order of Dismissal entered by the trial court on December 11, 2013. The Order of Dismissal includes a withdrawal order to the Texas Department of Criminal Justice (TDCJ) to "withdraw money from the trust account of the inmate in accordance with this order and shall hold the money in a separate account [and] shall forward the money to the District Clerk of Anderson County ...." Order of Dismissal.

The withdrawal order here, unlike withdrawal orders under Section 501.014, Tex.Gov't Code, which are usually entered separately and years after the judgment of conviction, was entered under Chapter 14, of the Texas Divil Practice and Remedies Code, as part of the Order of Dismissal in this case.

Appellant filed a Motion to Vacate Judgment, challenging all indigency decisions and the Withdrawal Order which sought post-judgment enforcement. The trial court did not address nor rule on the Motion to Vacate Judgment.

"After this cause was submitted to this court for consideration, Enriquez filed a plea to the jurisdiction." Memorandum Opinion, at 2. Enriquez argues that the Court does not have jurisdiction because it does not have a final, appealable order, disposting of all the issues presented to the trial court. See Maldonado v. State, 360 S.W.3d 10, 13 (Tex.App. -- Amarillo 2010)("the trial court's disposition of such a motion creates an appealable order"), citing to Ramirez v. State, 318 S.W.3d 906, 908 (Tex.App. -- (Tex.App. -- Waco 2010, no pet.)(holding that "only where [the withdrawal notification is] properly challenged and denied relief is there an order that if final from which an inmate can appeal").

This Court denied Enriquez's plea to jurisdiction, giving the following reasons:

> (1) "... a withdrawal notification [under §501.014(e)(4] is akin to a garnishment action and can be contested by the inmate separately from the judgment ordering payment". Memorandum Opinion, at 3.

> (2) "The cause before us does not involve a Section 501.014 withdrawal notification." Memorandum Opinion,a t 3.

> (3) "Here, all pending parties and claims were finally disposed of and the December 11, 2013 order of dismissal is therefore final." Memorandum Opinion, at 3.

Appellant presents first in his motion for rehearing the jurisdictional question because he contends the Memorandum Opinion is a legal nullity because the Court does not have jurisdiction over the appeal.

2.  Reasons Why Rehearing Is
    Mandated By Law:

The panel's decision to assume jurisdiction in a case where an appealable and final order does not exist and where the court did not follow controlling law from the Texas Supreme Court is so beyond the pale that rehearing is mandated by law. A copy of the court's Memorandum Opinion is attached.

### A. Panel Failed to Recognize and To Follow Harrel v. State, 286 3d 315 (Tex. 2008)

"Texas courts have long recognized that prisoners have a property interest in their inmate trust accounts. Harrel v. State, 286 S.W.3d 315, 317 (Tex. 2008). This property interest is the basis for the Harrel decision that prisoners are entitled to due process protections when withdrawal orders are issued against them in civil cases.

In 2008, the courts of appeals were divided whether a withdrawal order under §501.014, Tex.Gov't Code, was a criminal matter or a civil matter. The Harrel court had to decide that question to determine its jurisdiction. Id. at 317. The Harrel court held that a withdrawal notification directing prison officials to withdraw money from an inmate trust account pursuant to Section 501.014(e), Tex.Gov't Code, is a civil matter akin to a garnishment action or an action to obtain a turnover order. Id. at 317-319.

Here, there is no question whether the withdrawal order is criminal. It is a civil matter without question because the withdrawal notification stems from a civil judgment and was issued

under Section 14,006, Tex.Civ.Prac. & Rem. Code, a civil statute. The due process Harrel held was necessary to protect a prisoner's property interest in his trust account when a withdrawal order is entered against him apply automatically. It does not matter whether the withdrawal order stems from a criminal judgment through the Texas Government Code or a civil judgment through the Texas Civil Practice and Remedies Code, the subject prisoner is entitled to the due process mandated by Harrel.

Harrel held that "due process requires that an inmate have an opportunity to contest the dollar amount and statutory basis of the withdrawal by way of a motion to modify, correct, or rescind the withdrawal notification ...." Maldonado v. State, 360 S.W.3d 10, 13 (Tex.App. -- Amarillo 2010).

The Maldonado court explained that "the trial court's disposition of such a motion creates an appealable order." Maldonado, supra, 360 S.W.3d at 13, citing Ramirez v. State, 318 S.W.3d 906, 908 (Tex.App. -- Waco 2020, no pet)(holding that "only where [the withdrawal notification is] properly challenged and denied relief is there an order that is final from which an inmate can appeal").

The panel's first reason to overrule Appellant's plea to jurisdiction, namely, that "a withdrawal notification [under 501.014(c)(4), supra], is akin to a garnishment action and can be contested by the inmate separately from the judgement ordering payment" makes no sense whatsoever and underscores why the panel has misunderstood the facts and law in this case.

First, garnishment orders are usually entered years after the judgment ordering payment. In those situations, the prisoner by time has to challenge the withdrawal order separately because the appeal from the judgment ordering payment is over. Second, there is nothing in any reported opinion suggesting that due process protects a prisoner's trust fund property right only against garnishment orders. Harrel is not so limited. It holds that a prison is entitled to due process to protect his trust fund property interest whenever any withdrawal order is entered against him whether it stems from a criminal or a civil judgment. The panel's implication that only garnishment orders are subject to due process constraints is imply wrong in the strongest sense of the word. The withdrawal order issued in this case stems from a civil judgment and it was issued under Chapater 14.006, Tex.Civ.Prac. & Rem. Code, a civil statute. Enriquez is entitled to all the due process protections set forth in Harrel.

The latter half of the panel's first reason to overrule Enriquez's plea to jurisdiction, namely, that a garnishment order "can be contested by the inmate separately from the judgment ordering payment" is useless verbage that contributes nothing to the issue. It ignores and fails to address the holding by the Texarkana court of appeals in In re Carson, 12 S.W.3d 886 (Tex.App. -- Texarkana 2000), which makes it very clear that the way to challenge the issues sub judice is by direct appeal from the dismissal of suit. Id, at 888.

> Carson complains because the Division did not use the
> six month period prior to his filing of suit for its
> calculation, but instead used a much later time.
>
> ***
>
> Carson asks us to order the district judge who
> initially heard his case to direct the prison to
> furnish him the information about Carson's trust
> account and to issue a more precise order to pay
> costs based on the proper time frame.  He also
> asks us to order the operating officer of the Inmate
> Trust Fund, Mary Cerilla, to use the correct time
> period in calculating these costs.

In re Carson, supra, at 887.

> The Carson court did not issue mandamus, holding:
>
> The relief Carson seeks could have been properly
> sought in his direct appeal from the dismissal of
> his sout,  He did not take advantage of clearly
> adequate remedy when it existed, so he may not now
> persue a remedy by mandamus.

In re Carson, supra, at 888.

There is not a doubt in Appellant's mind that had he taken
any other route for relief than direct appeal, that this panel
would be citing Carson why Appellant forfeited his right to
review.  Well, Appellant did not take another route.  He took
the route the courts of appeals told him to take, viz:  direct
appeal.

The law here is that if a withdrawal order is entered
separately from the judgment, it should be appealed separately.
However, if a withdrawal order is entered as a part of the
judgment, it should be appealed as part of the appeal from the
dismissal order.  Failure to do so waives the right of review.
In re Carson, supra, at 888.

### B. Panel's Second Reason to Overrule Plea to Jurisdiction Has No Basis In Law

The panel's second reason to overrule Appellant's plea to jurisdiction, namely, "[t]hat the cause before us does not involve a Section 501.014 withdrawal notification:, has no basis in law.

As pointed out previously, "Texas courts have long recognized that prisoners have a property interest in their inmate trust accounts." Harrel, supra, 286 S.W.3d at 317. This property interest is the basis for the Harrel holding that prisoners are entitled to due process protections when withdrawal orders are issued against them in civil cases.

Section 501.014 of the Texas Government Code has nothing to do with the due process to which prisoners are entitled to protect their property interest in their inmate trust accounts. In 2008, the courts of appeals were divided whether a withdrawal order under §501.014, Tex.Gov't Code, was a criminal matter or a civil matter. The Harrel court had to decide that question to determine its jurisdiction. The Harrel court held that a withdrawal notification directing prison officials to withdraw money from an inmate trust account pursuant to Section 501.014(e), Tex.Gov't Code, is a civil matter akin to a garnishment action ar an action to obtain a turnover. Id. at 317-319. Harrel did not exclude withdrawal orders entered under §14.006 from due process protections. It included withdrawal orders under §501.014 as civil cases requiring due process protections.

Enriquez is entitled to the due process set forth in Harrel without regard to §501.014.

### C.   Panel's Third Reason to Overrule Plea to Jurisdiction Is Factually Baseless

The panel's third reason to overrule Appellant's plea to jurisdiction, namely, that "all pending parties and claims were finally disposed of and the December 11, 2013 order of dismissal is therefore final", is factually baseless, as shown by the record:

1.   The December 11, 2013, order of dismissal issuing a withdrawal order is in the record.  (CR 133).

2.   The costs that may be assessed is governed by §14.006(b), Tex.Civ.Prac. & Rem. Code:  "(b)  On the court's order, the inmate shall pay an amount equal to the lesser of; (1) 20 percent of the preceding six months' deposits to the inmate trust account; or (2) the total amount of court fees and costs."

3.   How the information to calculate costs is obtained is governed bv §14.006(f), Tex.Civ.Prac. & Rem. Code:  "(f) the inmate shall file a certified copy of the inmate's trust account statement with the court.  The statement must reflect the balance of the account at the time the claim is filed and activities in the account during the six months preceding the date on which the claim is filed.  The court may request the information required under this subsection."

4.   "Enriquez filed his original petition on February 13, 2012.  He filed an affidavit of inability to pay costs on February 7, 2012, accompanied by a certified copy of his inmate trust account statement showing account information for August 2011 through Janaury 2012.  The statement shows a total of $570.00 in deposits in the preceding six months ...." Memorandum Opinion, at 4.

5.   Twenty percent of $570.00 is $114.00.

6.   Enriquez filed a motion to vacate judgment challenging the withdrawal order.  (CR 135)

7.   The trial court did not address or deny the motion to vacate judgment.

8.   Notice of appeal was filed on January 17, 2014.  (CR 139).

9.   On April 8, 2014, the bill of costs was filed by the district clerk totaling $412.00.  (CR  141)

There is a difference of $298.00 between the $114.00 Enriquez could be charged and the $412.00 costs submitted by the district clerk.

The record belies the panel's purported finding that "all pending ... claims were finally disposed of and the December 11, 2013 order of dismissal is therefore final." Memorandum Opinion, at 3.

The risk of an erroneous deprivation of Enriquez's trust fund property interests through the procedures used in this case is apparent on the face of the record. The record reflects Enriquez was never provided the necessary underlying documents nor afforded an adequate opportunity to compare the amounts the trial court could assess by statute to the amounts withdrawn and alert the court to any alleged errors.

The reported cases on this issue uniformly hold that only where the withdrawal notification is properly challenged and denied relief is there an order that is final from which an inmate can appeal. Maldonado, supra, 360 S.W.3d at 13; Ramirez, supra, 318 S.W.3d at 908; Webb v. State, 324 S.W.3d 299 (Tex.App. -- Amarillo 2010)

The Court needs to rehear this case to apply the correct record facts and follow the controlling law on what constitutes a final order from which an inmate can appeal in cases where the trial court enters a withdrawal order for post-judgment enforcement but does not address or deny the subject prisoner's motion to vacate, correct, or otherwise rescind the withdrawal order.

## II.  VENUE

1.    The Record Facts:

Enriquez was placed in prison on July 19, 1968.  Ex parte Enriquez, 490 S.W.2d 546, 547 (Tex.Cr.App. 1973).  At that time by law prison officials segregated the prisoners by race. Enriquez alleged in this action "claims of racial discrimination and segregation."  Appellees' Brief, at 3.  He alleged the Appellees "have maintained and operated a racially segregated and racially discriminatory prison system which discriminates against Hispanics by denying them equal educational opportunities and rehabilitative programs, housing them in segregated facilities, assigned jobs on the basis of race and color, denying them equal medical and dental treatment, and disciplining them with harsher punishments."  Appellees' Brief, at 3.  "Appellant further claims that Appellees have a policy in place regarding the supervision of their units that denies equal treatment and services to Hispanics that are 'provided routinely to Anglo inmates.'" Appellees' Brief, at 3.

Appellant pled that "Defendants' predecessors in the 1970's operated racially segregated prisoners in violation of the state and Federal Constitutions."  Amended Complaint, at paragraph 9.

Plaintiff's complaint alleges the ongoing tort of racial segregation and racial discrimination in the Texas prison system which accrued when Plaintiff was placed in prison in 1972 and which continuous to the present time.

"Enriquez initially filed his lawsuit in Travis County because some of the defendants are located in that county." Memorandum Opinion, at 3.

Defendants moved for venue transfer to Anderson County on the grounds that Appellant was imprisoned in Anderson County when the lawsuit was filed, citing to Section 15.019, Texas Civil Practice and Remedies Code.

Section 15.019(a), supra, is a mandatory venue statute enacted in 1995; however, it has a Savings Clause which precludes application of the statute to action which accrued prior to its effective date of September 1995:

> This Act applies only to a cause of action that accrues on or after the effective date of this Act. An action that accrued before the effective date of this Act is governed by the law applicable to the action as it existed immediately, before the effective date of this Act and that law is continued in effect for that purpose.

Section 10(a), Savings Clause of §15.019, Tex.Civ.Prac. & Rem. Code.

In their Appellees' Brief Appellees argued that "'if the Appellant's chosen venue rests on a permissive venue statute and the defendant files a meritorious motion to transfer based on a mandatory venue provision, the trial court must grant the motion.'" Appellees' Brief, at 6, 17.

Appellant filed a Reply Brief, with the permission of this Court. He specifically brought to the attention of the Court the Savings Clause of §15.019(a), supra. He also brought to this Court's attention that he arrived on the Michael Unit in 1987, that under Rule 87(b), Texas Rules of Civil Procedure, "[i]t shall

not be necessary for a claimant to prove the merits of a cause of action, but the existence of a cause of action, when pleaded properly, shall be taken as established as alleged by the pleadings", and that "if there is no evidence that venue was proper, the appellate court must reverse the trial court's erroneous venue ruling ...." Reply Brief for Appellant, at 5-6.

The panel struck the Reporter's Record of the February 6, 2013, hearing on Defendants' motion to transfer venue. This lest no evidence in the record supporting Defendants' motion to transfer venue to Anderson County.

The panel did not address or decide Appellant's claim that the Savings Clause of §15.019, supra, made the statute inapplicable to this case nor did the panel address or decide Appellant's claim that there is no evidence in the record to establish Anderson County is proper venue since, except for the Defendants' unsworn and unsupported motion to transfer venue, there is evidence of any kind supporting venue in Anderson County as all such possible evidence was struck from the record.

2.  Reasons Why Rehearing
    Is Mandated by Law:

The panel's decision overruling Appellant's venue arguments requires rehearing b ecause (1) the panel did not comply with Rule 87(b), TRAP, which requires that pleaded claims be accepted, (2) the panel did not address Appellant's claim that the Savings

Clause of §15.019, supra, made it inapplicable to this lawsuit, and did not address or decide Appellant's insufficient/no probative evidence claim, notwithstanding that all evidence that might support venue transfer was stricken from the record.

### A. Panel Failed To Follow Rule 87(b), Tex.R.Civ.P.

The record reflects Enriquez was placed in prison in 1968. He was located at several units over the course of his imprisonment and was finally transferred to the Michael Unit in 1987. When Enriquez arrived in prison, Texas law required the races to be segregated. Racial discrimination was practiced then by prison officials and it continues to be practiced today. Enriquez alleged this on-going tort in his initial and amended complaints. The courts below and this court are mandated by Rule 87(b), supra, to accept Enriquez's claims as pleaded in venue determination proceedings. The panel did not do so. It did not so much as mention Enriquez's claims or allegations in the venue section of its opinion. This rendered its decision on venue fundamentally flawed. Rehearing is necessary to comply with Rule 87(b), supra.

### B. Panel Failed To Follow Savings Clause of §15.019(a), Tex.Civ.Prac. & Rem. Code

The Savings Clause of §15.019(a), supra, precludes its application to lawsuits which accrued prior to its effective date of September 1995. The panel did not so much as mention the subject savings clause in the venue section of its opinion. It did not address why an inmate who arrived on the Michael Unit in 1987 would claim racial discrimination and segregation only after the effective date of §15.019(a). More likely, as the pleadings

establish, he alleged racial discrimination since he arrived on the Michael Unit in 1987. The failure of the panel to apply the Saving Clause of §15.019(a) requires a rehearing to apply §15.019 correctly.

### C. Panel Failed To Reverse Venue Transfer After All Possible Supporting Evidence Stricken

Enriquez filed suit in Travis County because "some of the Defendants are located in that county." Memorandum Opinion, 3. Defendants moved to transfer venue to Anderson County, alleging that "[d]uring the time of the events giving rise to his lawsuit, Appellant was an inmate housed in the Michael Unit ... in Tennessee Colony, Texas." Appellees' Brief, 2.

Appellant's pleadings are both sworn as required by law. His claims of racial segregaton and racial discrimination from the 1970s to present were restated under oath at the hearing of Defendants' motion to dismiss held in Anderson County. Thus, there is probative evidence in the record venue was proper in Travis County irrespective of Enriquez's confinement in Anderson County when suit was filed in Travis County.

The unsworn statement "during the time of the events giving rise to his lawsuit, Appellant was an inmate housed in the Michael Unit" made by counsel for Defendants in her motion to transfer venue is not evidence. The motion was not supported by affidavit or by prison records. The Reporter's Record of the February 6, 2013, hearing on Defendants' motion to transfer venue was stricken from the record. Thus, there is no probative evidence of any kind that venue is proper in Anderson County.

The controlling law in the fact situation before the Court is found in Wichita City v. Hart, 917 S.W.2d 779 (Tex. 1996), wherein the Texas Supreme Court held that if there is no evidence that venue was proper, the appellate court must reverse the trial court's erroneous venue ruling and remand the case for a new trial without conducting the usual harm analysis. Id. at 781.

It is necessary for the panel to rehear this case on the dispositive fact that the evidence that might have supported a venue transfer was striken and to apply the Wichita City holding.

### III. INDIGENCY

1. The Record Facts:

Enriqeuz filed an affidavit of inability to pay costs on February 7, 2012, wherein, inter alia, he attested he did not own property. The affidavit was accompanied by a certified copy of his trust account showing a one-cent balance. (CR 14). The trial court found Enriquez was not "indigent based upon the funds in his inmate trust account on February 7, 2012." Memorandum Opinion, at 4.

Enriquez argued that the trial court was bound by law to find him indigent, citing Donaldson v. TDCJ-CID, 355 S.W.3d 722, 725 (Tex.App. -- Tyler 2011), wherein the court noted that "[t]he law is well settled that a prisoner of a Texas Department of Criminal Justice facility who has no money or property is considered indigent".

The panel overruled Enriquez's argument "[b]ecause Enriquez had funds in his inmate trust account during the six months

preceding his suit, and he had a positive balance in his account at the time he filed suit, the trial court did not abuse its discretion in finding him not indigent." Memorandum Opinion, at 4.

2.  Reasons Why Rehearing
    Is Mandated By Law:

Enriquez owned no property andhad a one-cent balance in the trust account.  A rehearing is necessary because the panel did not have discretion to affirm a judgment finding Enriquez not indigent in light of controlling law from the Texas Supreme Court in Alford v. Lowry, 507 S.W.353 (Tex. 1980), that a prisoner in the Texas Department of Criminal Justice who has no money or property is considered indigent".

Instead of accepting the record facts and following the controlling law, the panel misapplied the law for determining indigency when an affidavit of inability is contested which is that "[a]s a general rule, the test for determining an inmate's entitlement to proceed in forma pauperis is whether the record as a whole shows by a preponderance of the evidence that the inmate would be unable to pay the costs of his suit if he really wanted to and made a good faith effort to do so."  Higgins v. Randall County Sheriff's Office, 257 S.W.3d 684, 686 (Tex. 2008).

Here, the general rule does not apply because the Appellant's affidavit was not contested and because the trial court found Appellant not "indigent based upon the funds in his inmate trust account on February 7, 2012.  Memorandum Opinion, at 4.

There is no difference between a one-cent balance and a zero balance for the purpose of determining indigency under Alford. The case needs to be reheard to apply Alford, supra.

## IV.  WITHDRAWAL ORDER

### 1.  The Record Facts:

Enriquez filed an affidavit of inability to pay costs on February 7, 2012, accompanied by a certified copy of his inmate trust account statement showing account information from August 2011 through January 2012.  The statement shows a total of $570.00 in deposits in the preceding six months and a balance of one-cent in the trust fund. [Twenty percent of $570.00 is $114.00.]

Section 14.006(b), supra, requires an inmate to pay the lesser of "20 percent of the preceding six months' deposits to the inmate trust account; or ... the Total amount of court fees and costs".

Section 14.006(f), supra, requires the inmate to filea certified copy of the inmate's trust account statement which must reflect the balance of the account at the time the claim is filed and activities in the account during the six months preceding the date on which the claim is filed.  The court may request the information required under this subsection.

The withdrawal order directed the TDCJ to calculate the lesser of the two amounts set by statute, but ordered the calculations made from the 6-month period preceding the date the dismissal order rather than from the 6-month period preceding the date the lawsuit was filed or from the information provided by the inmate under $14.006(f), supra.

Enriquez argued on appeal that the trial court ordered the calculations made on the wrong 6-month period.  Brief for Appellant at 17.

The panel did not address or decide this issue, mistakenly advancing it as a reason why Enriquez claimed the trial court abused its discretion in deciding indigency.

2. Reasons Why Rehearing
   Is Mandated By Law:

Rehearing of the withdrawal order issues is mandated by law because the panel failed to follow controlling law from the Texas Supreme Court in Bonds v. Texas Department of Criminal Justice, 953 S.W.2d 233 (Tex. 1997), wherein the Court held that "Section 14.006(b) requires an inmate to pay only the lesser of two sums. It gives the court no discretion to require payment of the greater sum." Id. at 234.

The panel by affirming the lower court's use of the wrong time period to calculate the lesser of the two sums allowed by §14.006(b) permits and may require that a greater sum than allowed by statute be charged to Enriquez.

This issue needs to be reheard to decide this issue on the controlling law set forth in Bonds, supra.

### V. CHAPTER 14

1. Record Facts:

Juan Enriquez did not file an affidavit of inability to pay in Anderson County. He could not because he had the money to do so and so informed the court at the hearing of Defendants' motion to dismiss.

2. Reasons Why Rehearing
   Is Mandated By Law:

The trial court and this Court have subjected this case to Chapter 14, Tex.Civ.Prac. & Rem. Code, determinants. However,

the jurisdictional base for such review was never filed in this case, A new charge or new cost amount started when the case arrived in Anderson County. Enriquez had the option then to pay the fees or to file an affidavit of inability to pay. He did not file such an affidavit and on the record offered to pay. The trial court did not have authority to proceed under Chapter 14 when an affidavit of inability to pay was not filed in the Anderson County proceedings.

This case must be reheard to allow this issue to be briefed and developed as it appears also to challenge the jurisdiction of the Court to hear and decide this appeal.

WHEREFORE, PREMISES CONSIDERED, Appellant prays that his motion be in all things granted and the issues set forth herein reheard.

Respectfully submitted,

Juan Enriquez
227122
TDCJ-Michael
2664 FM 2054
Tennessee Colony, TX 75886

Certificate of Service

I, Juan Enriquez, certify that a correct copy of the above motion was served by placing same in the United States mail, postage prepaid, on July 21, 2015, addressed to Briana Webb, Assistant Attorney General, P. O. Box 12548, Capitol Station, Austin, TX 78711.

Juan Enriquez

Mailbox Filing Verification

I, Juan Enriquez, declare under penalty of perjury, that the foregoing motion was filed on July 21, 2015, by placing same in

the Institutional Mail System, first class mail, postage prepaid, addressed to Clerk, Twelfth Court of Appeals, 1517 West Front Street, Suite 354, Tyler, TX 75702.  Executed on July 21, 2015.

Juan Enriquez

## NO. 12-14-00016-CV

## IN THE COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT

## TYLER, TEXAS

| | | |
|---|---|---|
| *JUAN ENRIQUEZ,*<br>*APPELLANT* | § | *APPEAL FROM THE 3RD* |
| *V.* | | |
| | § | *JUDICIAL DISTRICT COURT* |
| *RICK THALER, BRAD LIVINGSTON,*<br>*OLIVER BELL, TODD FOXWORTH,*<br>*JOHN RUPERT, and REYNALDO*<br>*CASTRO,*<br>*APPELLEES* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Juan Enriquez appeals from the trial court's dismissal of his suit pursuant to Chapter Fourteen of the Texas Civil Practice and Remedies Code. He raises four issues on appeal. We affirm.

### BACKGROUND

Enriquez, an inmate in the Texas Department of Criminal Justice-Institutional Division (TDCJ), filed suit in Travis County in February 2012, against Rick Thaler, Director, TDCJ; Brad Livingston, Executive Director, TDCJ; and Oliver Bell, Chair, TDCJ, each individually and in his official capacity. Upon motion of the defendants, the case was transferred to Anderson County by order dated February 6, 2013. On May 8, 2013, Enriquez filed his First Amended Petition alleging violations of his right to equal protection pursuant to United States Code Title 42, Section 1983 and racial discrimination in violation of the federal and state constitutions. He sought declaratory and equitable relief as well as actual, exemplary, and nominal damages. By supplemental petition, Enriquez added as defendants Todd Foxworth, John Rupert, and Reynaldo Castro, all former wardens of the Michael Unit, and "John Doe," a name he used to refer to all correctional officers who carried out the orders of their superiors. Defendants moved to dismiss

the case pursuant to Texas Civil Practice and Remedies Code Chapter Fourteen. The trial court determined that Enriquez's claims are frivolous or malicious, that he failed to file an affidavit relating to previous filings that complied with the statute, and that he failed to exhaust his administrative remedies. Therefore, the court dismissed the suit without prejudice. The court found that Enriquez was not indigent and ordered him to pay court fees and costs charged to him in this cause in accordance with Chapter Fourteen.

## JURISDICTION

After this cause was submitted to this court for consideration, Enriquez filed a plea to the jurisdiction. He asserts that the district clerk presented the cost bill after he filed his notice of appeal. Therefore, he did not have the opportunity to alert the trial court to the variance between the amount allowed by statute to be withdrawn to pay costs and what was withdrawn. He contends his notice of appeal was premature because the trial court has not rendered judgment on the issue of the accuracy of the withdrawal notification. Therefore, he argues, he has not been given the required due process.

Based on Enriquez's inmate trust account statement, the court found Enriquez is not indigent. In compliance with Texas Civil Practice and Remedies Code Section 14.006, the trial court ordered that Enriquez shall pay an amount equal to the lesser of twenty percent of the preceding six months' deposits to his trust account or the total amount of court fees and costs. The court further ordered that, in each month following the month in which payment is made as above, he shall pay an amount equal to the lesser of ten percent of that month's deposits to the trust account or the total amount of court fees and costs that remain unpaid. Finally, the court ordered that payments shall continue until the total amount of court fees and costs are paid or until the inmate is released from confinement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.006 (West 2002). Enriquez acknowledges that he received notice of the costs assessed against him and had the opportunity to challenge that assessment in his motion to vacate judgment.

The district clerk's bill of costs was not produced until four months after the dismissal order was signed. That bill reflects actual amounts charged, not amounts withdrawn from the inmate's account. Enriquez appears to be complaining that amounts withdrawn from his account were greater than ordered and that he has not had the opportunity to bring this to the attention of the trial court, a denial of due process. Thus, he argues, this appeal should be abated and the

2

cause remanded to the trial court for consideration of the "prison withdrawal notification." We disagree.

The Texas Government Code authorizes the Texas Department of Criminal Justice to make withdrawals from an inmate's account to pay for all orders for court fees and costs. TEX. GOV'T CODE ANN. § 501.014(e)(4) (West 2012). Such a withdrawal notification is akin to a garnishment action and can be contested by the inmate separately from the judgment ordering payment. *Maldonado v. State*, 360 S.W.3d 10, 13 (Tex. App.–Amarillo 2010, no pet.). The cause before us does not involve a Section 501.014 withdrawal notification. Here, all pending parties and claims were finally disposed of and the December 11, 2013 order of dismissal is therefore final. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). We overrule Enriquez's plea to the jurisdiction.

## VENUE

In his first issue, Enriquez contends the Travis County trial court erred in transferring the case to Anderson County because he did not get the requisite forty-five day notice prior to the hearing on the motion to transfer. Further, he asserts, the trial court did not allow him to undertake the discovery contemplated by Texas Rule of Civil Procedure 88. He argues that, due to the shortened notice time, he lost the right to challenge the sufficiency of the evidence on which Defendants rely for their venue motion.

Enriquez argues that venue rulings are exempt from the harmless error rule and, therefore, if the trial court makes an erroneous venue ruling, the case must be reversed. In support of this argument, he cites to *Wilson v. Texas Parks & Wildlife Department*, 886 S.W.2d 259, 261 (Tex. 1994). *Wilson* stands for the proposition that, if a plaintiff files suit in a county of proper venue, it is reversible error to transfer venue even if the county of transfer would have been proper if originally chosen by the plaintiff. *Id.* Here, Enriquez initially filed his lawsuit in Travis County because some of the defendants are located in that county. However, this case is subject to a mandatory venue provision requiring an action that accrued while the plaintiff was housed in a facility operated by or under contract with the Texas Department of Criminal Justice to be brought in the county in which the facility is located. TEX. CIV. PRAC. & REM. CODE ANN. § 15.019(a) (West 2002). Enriquez was housed in a facility located in Anderson County and fails to explain what discovery was necessary on the venue issue. Accordingly, even if Enriquez

3

did not receive forty-five days' notice, the trial court did not err in granting Defendants' motion to transfer the case to Anderson County. *Id*. We overrule Enriquez's first issue.

## INDIGENCY

In his second issue, Enriquez asserts that the trial court abused its discretion in determining that he is not indigent. He argues that the trial court erroneously based its decision on a six month deposit period at the time of the payment order rather than on the six month deposit period preceding the filing of the lawsuit. He does not explain the basis for that statement.

Enriquez filed his original petition on February 13, 2012. He filed an affidavit of inability to pay costs on February 7, 2012, accompanied by a certified copy of his inmate trust account statement showing account information for August 2011 through January 2012. The statement shows a total of $570.00 in deposits in the preceding six months and an average balance of $199.03 over the six months. In its order of dismissal, the court found Enriquez not "indigent based upon the funds in his inmate trust account on February 7, 2012."

As a general rule, the test for determining an inmate's entitlement to proceed *in forma pauperis* is whether the record as a whole shows by a preponderance of the evidence that the inmate would be unable to pay the costs of his suit if he really wanted to and made a good faith effort to do so. *Higgins v. Randall Cnty. Sheriff's Office*, 257 S.W.3d 684, 686 (Tex. 2008). An inmate who has funds in his inmate trust account at the time he files his affidavit of indigency is not considered indigent. *See Donaldson v. Tex. Dep't of Criminal Justice–Corr. Insts. Div.*, 355 S.W.3d 722, 725 (Tex. App.–Tyler 2011, pet. denied).

Here, the February 7, 2012 trust account statement shows that Enriquez had deposits of $570.00 in the six months before filing suit. The six month average balance was $199.03, and the average deposit during the six month period was $95.00. Additionally, Enriquez filed a second trust account statement showing balance information for November 2011 through April 2012. The highest balance in February 2012, the month he filed suit, was $904.16 and total deposits in that month were $995.00. Because Enriquez had funds in his inmate trust account during the six months preceding his suit, and he had a positive balance in his account at the time he filed suit, the trial court did not abuse its discretion in finding him not indigent. *See id.*;

4

*McClain v. Terry*, 320 S.W.3d 394, 398 (Tex. App.–El Paso 2010, no pet.). We overrule Enriquez's second issue.

## CHAPTER FOURTEEN

In his third issue, Enriquez contends that the statutory requirement that inmates must file a grievance and exhaust administrative remedies before filing suit does not apply to his claim of statutory and systemic racial segregation and discrimination. In his fourth issue, Enriquez contends that he filed an affidavit relating to previous filings in compliance with Section 14.004 and therefore the trial court abused its discretion in finding that he did not.

### Applicable Law

We review the trial court's dismissal of an *in forma pauperis* suit under an abuse of discretion standard. *Williams v. Tex. Dep't of Criminal Justice–Institutional Div.*, 176 S.W.3d 590, 593 (Tex. App.–Tyler 2005, pet. denied). A trial court abuses its discretion if it acts arbitrarily, capriciously, and without reference to any guiding rules or principles. *Lentworth v. Trahan*, 981 S.W.2d 720, 722 (Tex. App.–Houston [1st Dist.] 1998, no pet.). We will affirm a dismissal if it was proper under any legal theory. *See Johnson v. Lynaugh*, 796 S.W.2d 705, 706-07 (Tex. 1990) (per curiam).

Chapter Fourteen of the Texas Civil Practice and Remedies Code controls suits brought by an inmate in which the inmate filed an affidavit or unsworn declaration of inability to pay costs. TEX. CIV. PRAC. & REM. CODE ANN. § 14.002(a) (West Supp. 2014). Section 14.003 authorizes a trial court to dismiss an inmate's claim, filed *in forma pauperis*, either before or after service of process occurs, if it finds the claim to be frivolous. TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(a)(2) (West 2002). Additionally, the inmate must comply with the procedural requirements set forth in Chapter Fourteen. TEX. CIV. PRAC. & REM. CODE ANN. §§ 14.002(a), 14.004, 14.005 (West 2002 & Supp. 2014). Failure to fulfill those procedural requirements will result in the dismissal of an inmate's suit. *Brewer v. Simental*, 268 S.W.3d 763, 767 (Tex. App.–Waco 2008, no pet.).

### Administrative Remedies

Chapter Fourteen requires, in part, that an inmate proceeding *in forma pauperis* properly exhaust his administrative remedies by completing the grievance process. TEX. CIV. PRAC. & REM. CODE ANN. § 14.005. The Texas Department of Criminal Justice's inmate grievance

procedure is a two-step process outlined in its Offender Orientation Handbook. Tex. Dep't of Crim. Justice, *Offender Orientation Handbook,* 74-76 (Jan. 2015), http://www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook_English.pdf. The inmate is to file the Step 1 grievance form within fifteen days of the alleged incident. The inmate may appeal the Step 1 response by filing a Step 2 grievance within fifteen days of the date the response is returned to the inmate. *Id.* at 74. The inmate may file a grievance only on issues that personally apply to him, with the exception of sexual abuse and related issues. *Id.* The Handbook lists grievable issues and nongrievable issues. The interpretation or application of TDCJ policies, rules, regulations, and procedures is grievable. *Id.* State or federal court decisions, laws, and regulations are not grievable. *Id.* at 75. Additionally, the federal Prison Litigation Reform Act specifically provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2013); *Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 1824, 149 L. Ed. 2d 958 (2001).

An inmate who files a clam that is subject to the grievance system established under Texas Government Code Section 501.008 shall file with the court an affidavit or unsworn declaration stating the date the grievance was filed and the date the written decision was received by the inmate, and a copy of the written decision from the grievance system. TEX. CIV. PRAC. & REM. CODE ANN. § 14.005(a). A court shall dismiss a claim if the inmate fails to file the claim before the thirty-first day after the date the inmate receives the written decision from the grievance system. *Id.* § 14.005(b). An inmate may not file a claim in state court regarding operative facts for which the grievance system provides the exclusive administrative remedy until he receives a written decision issued by the highest authority provided for in the grievance system or, if he has not received a written decision, the 180th day after the date the grievance is filed. TEX. GOV'T CODE ANN. § 501.008(d) (West 2012). A claim is considered to have no arguable basis in law, and is therefore frivolous, if a prisoner has failed to exhaust his administrative remedies. *Retzlaff v. Tex. Dep't of Crim. Justice*, 94 S.W.3d 650, 653 (Tex. App.–Houston [14th Dist.] 2002, pet. denied).

Enriquez asserts that his causes of action are not subject to the grievance process. We disagree. Enriquez brought claims under United States Code Title 42, Section 1983 and the

6

United States and Texas Constitutions. The Prison Litigation Reform Act specifically states that claims regarding prison conditions that are brought under federal law are subject to administrative remedies. 42 U.S.C. § 1997e(a); *Booth*, 532 U.S. at 739, 121 S. Ct. at 1824.

In his petition, Enriquez globally complains that the defendants violated the Texas Constitution by discriminatory practices in the areas of educational programs, rehabilitative programs, housing and job assignments, dental and medical treatment, disciplinary administration, hiring practices, and policies regarding obtaining money and property from inmates. The TDCJ Offender Orientation Handbook states that the interpretation or application of TDCJ policies, rules, regulations, and procedures is grievable. Tex. Dep't of Crim. Justice, *Offender Orientation Handbook* at 74. Accordingly, Enriquez was required to complete the two-step grievance process. However, with the exception of certain issues not applicable here, he is allowed to file grievances only on issues that personally apply to him. *Id.*

Enriquez asserts that he filed a grievance raising the claims in this suit. The record does not include a copy of the grievance. Therefore, Enriquez has not shown the details or date of the alleged incident, or whether he filed the grievance within fifteen days of the incident. The record includes an advisory to the trial court, filed July 25, 2013, noting the grievance number, that Step 1 was completed June 11, 2013, long after this suit was filed, and setting out the response verbatim. The response refers to "racial mixing" in housing assignments. Assuming this grievance timely raised a claim in this suit, Enriquez did not file a Step 2 grievance appealing the Step 1 response. By not filing a Step 2 grievance, Enriquez failed to exhaust his administrative remedies for his allegation that Defendants discriminate in housing assignments. *Crain v. Prasifka*, 97 S.W.3d 867, 870 (Tex. App.–Corpus Christi 2003, pet. denied) (op. on reh'g). Because no grievances were filed for the remainder of his claims, Enriquez failed to exhaust his administrative remedies for those claims. TEX. CIV. PRAC. & REM. CODE ANN. § 14.005; *Leachman v. Dretke*, 261 S.W.3d 297, 309 (Tex. App.–Fort Worth 2008, no pet.) (op. on reh'g). Accordingly, Enriquez failed to comply with Section 14.005's exhaustion of remedies requirement, a proper basis for the trial court's dismissal order. *See Brewer*, 268 S.W.3d at 767. We overrule Enriquez's third issue.

## Previous Claims

In determining whether a claim is frivolous or malicious, a trial court may consider whether the claim is substantially similar to a previous claim filed by the inmate that arises out of

7

the same operative facts. TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(b)(4) (West 2002). Accordingly, an inmate who files an affidavit or unsworn declaration of inability to pay costs must file a separate affidavit or declaration setting out the following information:

(1) Identifying each action, other than an action under the Family Code, previously brought by the person and in which the person was not represented by an attorney, without regard to whether the person was an inmate at the time the action was brought; and

(2) Describing each suit that was previously brought by:
  (A) stating the operative facts for which relief was sought;
  (B) listing the case name, cause number, and the court in which the action was brought;
  (C) identifying each party named in the action; and
  (D) stating the result of the action, including whether the action or a claim that was a basis for the action was dismissed as frivolous or malicious.

TEX. CIV. PRAC. & REM. CODE ANN. § 14.004(a).

Further, if the affidavit or unsworn declaration filed under this section states that a previous action or claim was dismissed as frivolous or malicious, the affidavit or unsworn declaration must state the date of the final order affirming the dismissal. *Id.* § 14.004(b). Substantial compliance with the affidavit of previous filings requirement has been held to be sufficient. *Gowan v. Tex. Dep't of Crim. Justice*, 99 S.W.3d 319, 322 (Tex. App.–Texarkana 2003, no pet.). However, the inmate must always include a sufficient description of the operative facts of prior suits, because that description is necessary for a trial court to make an evaluation as to whether the present suit is substantially similar to a prior suit. *See Bell v. Tex. Dep't of Crim. Justice–Institutional Div.*, 962 S.W.2d 156, 158 (Tex. App.–Houston [14th Dist.] 1998, pet. denied). The inmate's failure to sufficiently describe the operative facts of his prior suits entitles the trial court to presume that the instant suit is substantially similar to one previously filed by the inmate, and therefore, frivolous and subject to dismissal. *See id.*

Enriquez failed to fully comply with the requirement that inmates proceeding *in forma pauperis* must file an affidavit or declaration setting out certain information so the trial court can determine if the claim is substantially similar to a previous claim filed by the inmate arising out of the same operative facts. Although Enriquez filed his affidavit of previous filings listing eleven prior suits, it lacks some pertinent details. One lawsuit, which does not name the court where the suit was filed, and does not name all of the defendants, complains that the defendants "operated a racially segregated and racially discriminatory prison system." Two others, one of

which does not identify all of the defendants, complain of poor dental treatment. Therefore, the trial court could have found this suit frivolous because Enriquez's disclosure of the operative facts of his prior suits was insufficient to overcome the presumption that the instant suit is substantially similar to those he previously filed. *See Bell*, 962 S.W.2d at 158. Accordingly, because Enriquez did not comply with the statutory requirement that he provide an adequate affidavit of prior suits filed, the trial court did not abuse its discretion in dismissing Enriquez's suit. *See Brewer*, 268 S.W.3d at 767. We overrule Enriquez's fourth issue.

## CONCLUSION

The trial court's order of dismissal is final, and this court has jurisdiction over this appeal. Because this case is subject to a mandatory venue provision, venue is proper in Anderson County. The trial court did not err when it determined that Enriquez is not indigent, did not exhaust administrative remedies, and did not comply with the requirement that he adequately identify and describe previously filed suits. Accordingly, we *affirm* the trial court's order of dismissal. All pending motions are overruled as moot.

GREG NEELEY
Justice

Opinion delivered July 8, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

9